**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:22-cv-05273 |
| | ) | |
| UNIVERSITY OF CHICAGO, | ) | Honorable Martha M. Pacold |
| | ) | Magistrate Judge Susan E. Cox |
| Defendant. | ) | |

## DEFENDANT UNIVERSITY OF CHICAGO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Scott L. Warner
Mary E. Deweese
Katherine M. Tierney, *admission pending*
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 655-1500 Phone
(312) 655-1501 Fax
scott.warner@huschblackwell.com
mary.deweese@huschblackwell.com
katherine.tierney@huschblackwell.com

*Counsel for Defendant*
*University of Chicago*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION .......................................................................................... 1

FACTS ALLEGED .......................................................................................... 1

    I.      PLAINTIFF'S ACTIONS TOWARD JANE ROE 1 ........................... 1

    II.     PLAINTIFF'S ACTIONS TOWARD JANE ROE 2 ............................ 2

    III.    UNIVERSITY PROCEEDINGS RELATED TO THE ROE 2 INCIDENT ........ 3

    IV.    UNIVERSITY PROCEEDINGS RELATED TO THE ROE 1 INCIDENT ........ 6

ARGUMENT .................................................................................................. 7

    I.      LEGAL STANDARD .................................................................. 7

    II.     PLAINTIFF HAS NOT STATED A VIABLE CLAIM OF SEX-BASED DISCRMINATION UNDER TITLE IX. .......................................... 8

          A.     Compliance with the Title IX Regulations and Related Guidance Does Not Give Rise to an Inference of Gender Bias. ................. 9

          B.     The Alleged Procedural Defects Plaintiff Cites Are Not Sufficient to Allege Gender Bias. .............................................. 12

          C.     An Allegedly False Allegation of Sexual Misconduct By Another Student Does Not Constitute Sex Discrimination by the University. ...... 14

          D.     Taking Student Complaints of Sexual Misconduct Seriously Does Not Give Rise to an Inference of Gender Bias. ......................... 15

    III.    PLAINTIFF HAS NOT STATED A CLAIM FOR BREACH OF CONTRACT. ............................................................................ 17

          A.     Plaintiff Fails to Identify Any Specific Contractual Promises That Were Allegedly Breached. ........................................... 17

          B.     Plaintiff Also Fails to Allege that the University Acted Arbitrarily, Capriciously, or in Bad Faith. ................................ 18

    IV.    PLAINTIFF HAS NOT STATED A CLAIM FOR PROMISSORY ESTOPPEL. ............................................................................ 19

    V.     PLAINTIFF IS NOT ENTITLED TO EMOTIONAL HARM DAMAGES ........ 20

CONCLUSION .............................................................................................. 20

CERTIFICATE OF SERVICE .......................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................... 1, 7, 8, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................... 7, 12

*Cummings v. Premier Rehab Keller*,
142 S. Ct. 1562 (2022) .................................................................................... 20

*Delta Consulting Group, Inc., v. R. Randle Const., Inc.*,
554 F.3d 1133 (7th Cir. 2009) .................................................................................... 8

*Doe v. Citadel*,
No. 2:21-cv-04198-DCN, 2022 WL 2806473 (D. S.C. July 18 2022) .................................... 12

*Doe v. Columbia Coll. Chi.*,
299 F. Supp. 3d 939 (N.D. Ill. 2017)
*aff'd*, 933 F.3d 849 (7th Cir. 2019) .................................................................................... *passim*

*Doe v. Columbia College Chicago*,
No. 17-CV-00748, 2018 WL 497284 (N.D. Ill. Jan. 22, 2018) .................................... 18

*Doe v. Loyola Univ. Chi.*,
No. 18-cv-7335, 2022 WL 4535090 (N.D. Ill. Sept. 28, 2022) .................................... 18, 19

*Doe v. Loyola Univ.-Chi.*,
No. CV 7293, 2021 WL 2550063 (N.D. Ill. 2021) .................................................. 10

*Doe v. Princeton Univ.*,
790 Fed. App'x 379 (3rd Cir. 2019) .................................................................... 8, 13

*Doe v. Purdue Univ.*,
928 F.3d 652 (7th Cir. 2019) ............................................................................ 11, 13, 14

*Doe v. Samford Univ.*,
29 F.4th 675 (11th Cir. 2022) .......................................................................... 8, 10, 15

*Doe v. Univ. of Chi.*,
No. 16 C 08298, 2017 WL 4163960 (N.D. Ill. Sept. 20, 2017) .................................... 19, 20

*Doe v. Univ. of Mass.-Amherst*,
No. 14-30143-MGM, 2015 WL 4306521 (D. Mass. July 14, 2015) ................................ 12

*Doe v. University of Southern Indiana,*
   43 F.4th 784 (7th Cir. 2022) ..................................................................... 11, 12, 14

*Fleming v. Chi. Sch. of Pro. Psych.,*
   No. 15 C 9036, 2017 WL 4310536 (N.D. Ill. Sept. 28, 2017)................................... 17

*Maere v. Churchill,*
   452 N.E.2d 694 (1983) ............................................................................. 20

*Packer v. Trs. of Ind. Univ. Sch. of Med.,*
   73. F.Supp.3d 1030 (S.D. Ind. 2014) ............................................................ 17

*Patton v. Univ. of Chi. Hosps.,*
   706 F. Supp. 627 (N.D. Ill. 1989) ................................................................ 20

*Rosenblum v. Travelbyus Ltd.,*
   299 F.3d 657 (7th Cir. 2022) ...................................................................... 17

*Schumann v. CITGO Petroleum Corp.,*
   No 99 C 4805, 2000 WL 528527 (N.D. Ill. Apr. 24, 2000) ................................... 20

## Rules

Fed. R. Civ. P. 8 .......................................................................................... 8

Fed. R. Civ. P. 12(b)(6).......................................................................... 1, 8, 18

Fed. R. Civ. P. 12(f).............................................................................. 8, 20

## Additional Authorities

University of Chicago, *Student Manual* (including Policy on Harassment, Discrimination,
   and Sexual Misconduct), https://studentmanual.uchicago.edu/ ............................... 18

## INTRODUCTION

Plaintiff is a graduate student at the University of Chicago ("University") who was accused of sexual misconduct by two female students, Jane Roe 1 ("Roe 1") and Jane Roe 2 ("Roe 2"), based on two separate encounters. The University investigated and adjudicated these complaints in separate proceedings. Plaintiff admitted that he had sexually harassed Roe 2, and a three-member University-wide Disciplinary Committee ("Committee") that heard that case also found him responsible for an additional violation of the University's Policy on Harassment, Discrimination, and Sexual Misconduct ("Policy") in relation to Roe 2. In a separate hearing, the Committee found Plaintiff responsible for violating the Policy with regard to Roe 1. As a result of his multiple violations of the Policy, the University suspended Plaintiff for a total of seven quarters from Spring Quarter 2022 through the end of Fall Quarter 2023, an outcome that the University upheld after Plaintiff's appeals were denied. Plaintiff now challenges these decisions in a three-count Complaint alleging Title IX, breach of contract, and promissory estoppel claims. The Complaint fails to allege the required elements of any of these claims and therefore should be dismissed in its entirety for failure to state a claim pursuant to Rule 12(b)(6).

## FACTS ALLEGED[1]

### I.    PLAINTIFF'S ACTIONS TOWARD JANE ROE 1

Roe 1 was a student at the University who lived near Plaintiff. Compl. ¶¶ 11, 14. On November 14, 2020, Plaintiff invited Roe 1 to his apartment where he offered her alcohol (and she accepted). *Id*. at ¶ 14. They subsequently "began to make-out." *Id*. at ¶ 15. According to Plaintiff, he then stuck his hand in Roe 1's shirt. *Id.* at ¶ 15. Roe 1 indicated she did not consent to this conduct by removing his hand. *Id*. Despite her prior refusal, Plaintiff placed his hands on Roe 1's

---

[1] The University strongly disputes many allegations in the Complaint but assumes them to be true solely for purposes of this motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

body again, this time "on the outside of her pants near her belt buckle." *Id*. Roe 1 again removed Plaintiff's hand. *Id*. Then, after Roe 1 had twice removed Plaintiff's hands from her body, Plaintiff "verbally asked for consent to progress things forward" sexually. *Id.* at ¶ 16. Roe 1 "rejected the request." *Id*. After Roe 1 had rejected Plaintiff's sexual advances at least three times (*id.* at ¶¶ 15-16), she left Plaintiff's apartment. *Id*. at ¶ 17.

Roe 1's recollection of the night, as set forth in the Complaint, differs from Plaintiff's. Roe 1 reported to the University that Plaintiff "forced her to touch his penis" and asked her about its size. *Id*. at ¶¶ 49, 52, 56. Roe 1 also stated that Plaintiff "forced his hand inside of [her] underwear and penetrated her vagina with his fingers." *Id*. at ¶ 53. She reported that Plaintiff "put his hand on her throat and pushed her up against a door while they were making out." *Id*. Finally, Roe 1 reported that Plaintiff "would not let her leave [his apartment] without kissing him." *Id*. at ¶ 55.

## II.    PLAINTIFF'S ACTIONS TOWARD JANE ROE 2

Approximately 11 months after the incident with Roe 1, Plaintiff engaged in another incident of alleged sexual misconduct, this time involving Roe 2. On October 22, 2021, Plaintiff celebrated his birthday with friends, including Roe 2. *Id*. at ¶ 20. That night, Plaintiff and Roe 2 were texting about a confrontation Plaintiff had with a third party the previous night. *Id*. at ¶ 48. Roe 2 invited Plaintiff to her apartment to discuss the confrontation while she cooked. *Id*. When Plaintiff arrived at Roe 2's apartment, she offered him a glass of water and told him he could stay the night. *Id*. at ¶ 22. Plaintiff then entered Roe 2's bedroom and immediately removed all his clothing except his boxers. *Id*. Plaintiff and Roe 2 then laid on Roe 2's bed. *Id*. at ¶ 23.

Although Plaintiff labels Roe 2's description of subsequent events as "false," the Complaint itself makes clear that the two agree on much of what happened next. *Id*. at ¶ 32. Roe 2 reported to the University that Plaintiff exposed himself to her. *Id*. Plaintiff admits that he removed his boxers in her presence, thus exposing himself. *Id*. at ¶ 24. Roe 2 reported that Plaintiff

"non-consensually touched her breasts and butt." *Id*. at ¶ 32. Plaintiff also admits that he touched Roe 2's "butt" and "attempted to touch her breasts." *Id*. at ¶ 25. Roe 2 reported that Plaintiff attempted to convince her to engage in unwanted sexual activity. *Id*. at ¶ 33. Plaintiff admits he asked Roe 2 "several times" if she would have sex with him, despite Roe 2 saying no and stating that "she did not want to continue." *Id*. at ¶ 26. In addition to Roe 2's reports that Plaintiff corroborated in his Complaint, she also reported that he "masturbated in front of her," asked her about the size of his penis, offered to pay her for sex using school organization funding, "touched her with his penis," and attempted to touch her genitals. *Id*. at ¶¶ 32-33, 56.

Plaintiff's admissions generally mirror Roe's reports about what happened next. After repeatedly rejecting Plaintiff's advances, Roe 2 sought to get Plaintiff out of her apartment. *Id*. at ¶ 27. She placed Plaintiff's clothing in the hallway in an attempt to get him to leave. *Id*. Plaintiff alleges that Roe 2 removed his clothing from the apartment only once, while Roe reported that it happened three times. *Id*. at ¶¶ 27, 32. Plaintiff admits that he "did not automatically leave" Roe 2's apartment despite Roe 2 clearly indicating she wanted him to go. *Id*. at ¶ 27. Finally, around four in the morning, Plaintiff made Roe 2 retrieve his clothes from the hallway and then left her apartment. *Id*. The next morning, Plaintiff learned that Roe 2 felt uncomfortable about the events of the previous night and texted her to apologize for his behavior. *Id*. at ¶¶ 29, 35.

## III.   UNIVERSITY PROCEEDINGS RELATED TO THE ROE 2 INCIDENT

Shortly after this incident, Roe 2 filed a formal complaint with the University alleging that Plaintiff had violated the Policy. *See id*. at ¶ 31. On November 1, 2021, the University Title IX Office[2] sent Plaintiff an order not to contact Roe 2. *Id*. at ¶ 30. Four days later, the Title IX Office sent Plaintiff a formal complaint letter explaining that Roe 2 had submitted a formal complaint

---

[2] The University uses the term "Title IX Office" herein because it is used in the Complaint and understands it to refer generally to the University personnel responsible for addressing complaints under the Policy.

against him accusing him of violating the Policy by engaging in non-consensual "sexual conduct," "sexual abuse," and "sexual harassment." *Id*. at ¶¶ 31, 33.

On November 15, 2021, Plaintiff met with the Associate Dean of Students for Disciplinary Affairs, Jeremy Inabinet, to discuss Roe 2's formal complaint, discuss the disciplinary process, and ask any questions he had. *Id*. at ¶ 42. The same day, the University invoked its emergency removal policy by removing Plaintiff from leadership positions during the pendency of the Title IX proceedings. *Id*. at ¶¶ 41, 71. The University initially incorrectly referred to this process as implementing "supportive measures," and the University's Title IX Coordinator, Bridget Collier, corrected this mistake when it was brought to her attention. *Id*. at ¶ 72.

In late January 2022, Plaintiff received evidence that would be used in the hearing regarding the Roe 2 incident, including Roe 2's texts stating that multiple women had reported being sexually assaulted by Plaintiff. *Id*. at ¶ 37. Although the evidence also included texts Plaintiff had himself sent to Roe 2 and one of her witnesses, Plaintiff did not receive copies of these text messages from the University until later due to an administrative delay. *Id*. at ¶ 36. On January 25, 2022, Plaintiff and Dean Inabinet discussed the allegations against him. [3] On February 2, 2022, Dean Inabinet spoke with Plaintiff again to answer his questions about the allegations against him and hear his concerns about the process. *Id*. at ¶ 62. This meeting was not recorded pursuant to University policy. *Id*. at ¶ 63.

On February 9, 2022, the University interviewed Plaintiff for the Roe 2 investigation (Roe 2 had been interviewed the previous month). *Id*. at ¶¶ 64, 70. The University initially asked Plaintiff to bring a list of any witnesses who could support his claims to his interview, but then

---

[3] This meeting addressed Plaintiff's concerns relating both to the allegations brought by Roe 2 and the allegations brought by Roe 1, which are discussed below.

gave him a one-week extension of time to do so. *Id.* at ¶ 69.[4] After Plaintiff's interview, he repeatedly emailed Ms. Collier, including with requests for information about the emergency removal policy. *Id.* at ¶¶ 71, 72. In response, Ms. Collier explained that the University implemented the emergency removal in Plaintiff's case because of the severity of the alleged conduct and the presence of multiple complaints against him.[5] *Id.* at ¶ 73. When Plaintiff asked for additional explanation, Ms. Collier did not reply to his email. *Id.*

Upon conclusion of the investigation of Roe 2's complaint, Plaintiff received an investigation report. *See id.* at ¶¶ 38, 43, 48, 87-89. The University held a pre-hearing meeting on March 22, 2022. *Id.* at ¶ 75. The hearing was held in a virtual format before the Committee on March 31, 2022 *Id.* at ¶ 84. At the hearing, the Committee gave both Plaintiff and Roe 2 the opportunity to present testimony. *Id.* at ¶¶ 85, 87. Significantly, during the hearing, Plaintiff admitted to and accepted responsibility for engaging in sexual harassment. *See id.* at ¶ 180.

In setting forth his concerns regarding the hearing, Plaintiff alleges that a Committee member made a sarcastic remark, stating that Plaintiff "had a great memory for someone who drank so much." *Id.* at ¶ 85. Plaintiff also alleges that a Committee member joined the hearing late and that Plaintiff "does not remember this Committee [] member even asking a question." *Id.* at ¶ 86. Finally, Plaintiff alleges that—although both parties testified at the hearing, *see id.* at ¶ 85— the Committee gave Roe 2 an opportunity to "present additional testimony" about her experience; in Plaintiff's opinion, this should not have occurred since Roe 2 chose not to submit "an optional response to the investigation report." *Id.* at ¶¶ 87-89.

---

[4] Plaintiff alleges that Roe 1 and Roe 2 were likewise asked to identify witnesses but appears to take issue with the fact that Roe 1's and Roe 2's witnesses (allegedly) were not contacted until late February or early March, when their interviews were held in January. Compl. ¶ 70. Plaintiff does not allege, however, when Roe 1 or Roe 2 *identified* their witnesses, nor does he allege when his witnesses were contacted.
[5] The second set of allegations against Plaintiff was filed by Roe 1 and is discussed below.

The Committee found Plaintiff responsible for sexual harassment (which he admitted) and sexual abuse in violation of the Policy. *Id.* at ¶¶ 90, 92, 180. In so doing, the Committee was required to weigh the credibility of the parties and ultimately found Roe 2 "to be more credible than [Plaintiff]." *Id.* at ¶ 90. Although Roe 2 had asked the University to expel Plaintiff, the University decided on a lesser sanction: a three-quarter suspension.[6] *Id.* at ¶¶ 92-93. During the suspension, Plaintiff was banned from campus and precluded from graduating, joining clubs, and holding leadership positions. *Id.* at ¶ 93. Plaintiff appealed the finding of responsibility and sanction. *Id.* at ¶ 103. Dean Belinda Vazquez evaluated the request for appeal and denied it because it "did not meet the criteria to set up a review board and reconsider his case." *Id.* at ¶¶ 194, 112.[7]

## IV.    UNIVERSITY PROCEEDINGS RELATED TO THE ROE 1 INCIDENT

During the pendency of the proceedings regarding the Roe 2 incident, the University initiated (and completed) separate proceedings regarding the Roe 1 incident. Shortly after Roe 2 had filed a complaint against Plaintiff, Roe 1 decided to file a formal complaint against Plaintiff related to the October 2020 incident. *Id.* at ¶ 49. On November 18, 2021, the University Title IX office sent Plaintiff a letter notifying him that Roe 1 had submitted a formal complaint against him alleging that he had violated the Policy by engaging in non-consensual "sexual conduct," including non-consensual "sexual penetration," "sexual abuse," "sexual assault," and "sexual harassment." *Id.* at ¶¶ 49, 50, 53. On November 22, 2021, Plaintiff met with Dean Inabinet to discuss the proceedings and then filed a response to this complaint on December 15, 2021. *Id.* at ¶¶ 60, 61.

On February 9, 2022 (the same day the University interviewed Plaintiff regarding the Roe 2 incident), the University interviewed Plaintiff for the Roe 1 investigation. *Id.* at ¶ 64. Roe 1 had

---

[6] Given that Plaintiff had previously been suspended for four quarters, as discussed below, this sanction rendered Plaintiff's total suspension seven quarters in length. Compl. ¶ 94.

[7] The Policy generally aims for, but does not mandate that, a decision to be rendered in five business days. *Id.* at ¶ 110.

been interviewed the previous month. *Id*. at ¶ 70. In his interview, Plaintiff offered a different version of the facts than Roe 1. *Id*. at ¶ 67. He also showed what he characterized as a "friendly" text message he had received from Roe 1 after the November 2020 incident. *Id*. at ¶¶ 65-66.

On March 22, 2022, the University held a pre-hearing meeting in the Roe 1 matter, at which Plaintiff learned that, after the evidence submission deadline, Roe 1 had submitted additional evidence, in the form of diary entries she had written shortly after the incident in question. *Id*. at ¶¶ 75, 76. Roe 1 had forgotten about the diary entries in the year between when she wrote them and when she filed her complaint. *Id*. at ¶ 80. Plaintiff asserts that Roe 1 faked the diary entries, despite Dean Inabinet explaining that he had properly vetted them. *Id*. at ¶¶ 76, 79.

On March 25, 2022, the University held a hearing on Roe 1's complaint. *Id*. at ¶ 78. Both parties presented their version of the facts to enable the Committee to make a credibility determination. *Id*. at ¶¶ 80-81. Plaintiff alleges that the Committee asked Plaintiff questions about his alcohol consumption but did not ask Roe 1 similar questions. *Id*. at ¶ 81. On March 29, 2022, the Committee found Plaintiff responsible for violating the Policy and suspended him for four quarters. *Id*. at ¶ 82. The Committee based its decision on a determination that Roe 1 was more credible than Plaintiff. *Id*. On April 18, 2022, Plaintiff met with the Dean of Students to discuss filing an appeal of the finding and filed an appeal requesting a review of the finding of responsibility and sanction three days later. *Id*. at ¶ 96. The University denied this appeal because it "did not meet the criteria for convening a review board for reconsideration." *Id*. at ¶ 102.

## ARGUMENT

## I.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a Complaint must be supported by allegations that, if taken as true, plausibly suggest that the plaintiff is entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The court must accept the well-pleaded

allegations in the Complaint as true; however, legal conclusions and conclusory statements are not taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the Complaint has not shown that the plaintiff is entitled to relief as is required by Rule 8. *Id*. at 679. Furthermore, "Rule 12(f) provides that a district court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Delta Consulting Group, Inc., v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009) (quotations omitted).

## II.  PLAINTIFF HAS NOT STATED A VIABLE CLAIM OF SEX-BASED DISCRMINATION UNDER TITLE IX.

To plead a Title IX claim, "a plaintiff must allege: 1) that he was excluded from participation in or denied benefits of or subjected to discrimination in an educational program; 2) that receives federal financial assistance; and 3) that the exclusion was on basis of sex." *Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 949-950 (N.D. Ill. 2017) (quotations omitted) *aff'd*, 933 F.3d 849 (7th Cir. 2019). To allege a viable claim of sex-based discrimination, a Plaintiff cannot rely on "generalized allegations alone, [. . . ] but must combine them with facts particular to his case to survive a motion to dismiss." *Doe v. Columbia Coll. Chi.*, 933 F.3d at 855.

To allege a cognizable claim of gender bias, a plaintiff must be able to "identify specific facts or comments by university officials that are indicative of gender bias." *Columbia Coll. Chi.*, 299 F. Supp. 3d at 954; *see also Doe v. Samford Univ.*, 29 F.4th 675, 693 (11th Cir. 2022) (noting Title IX claim must be dismissed "without nonconclusory allegations that the male students were treated differently than any similarly situated female students based on sex"); *Doe v. Princeton Univ.*, 790 Fed. App'x 379, 383 (3rd Cir. 2019) (affirming dismissal of Title IX claim where allegations were too "generalized and conclusory to raise an inference of disparate treatment") (quotations omitted). In other words, a plaintiff "must provide some allegations to allow the Court

to infer a causal connection between his treatment and gender bias and raise the possibility of relief under Title IX above the speculative level." *Columbia Coll. Chi.*, 299 F. Supp. 3d at 950 (quotations omitted). Here, Plaintiff seeks to raise a plausible inference of gender bias by alleging that (1) the University was facing pressure from the federal government and the campus community, (2) minor procedural errors occurred, (3) he was falsely accused of sexual misconduct, and (4) the University favored complainants. As explained below, none of these allegations are sufficient to state a viable claim of sex discrimination under Title IX.

Indeed, instead of pleading any facts which could plausibly demonstrate gender bias, the Complaint corroborates many of the allegations raised by Roe 1 and Roe 2 in their sexual misconduct complaints against him. For example, Plaintiff admits that, after Roe 1 rejected his advances, he continued attempting to pursue sexual activity with her. Compl. ¶¶ 15-16. Plaintiff further admits he asked Roe 2 "several times" if she would have sex with him, despite—as Plaintiff acknowledges—Roe 2 saying no and that "she did not want to continue." *Id*. at ¶ 26. As a result, Plaintiff's own allegations clearly illustrate the non-discriminatory basis for the University's decisions that he seeks to challenge as being the product of gender bias. As described below, Plaintiff's allegations do not give rise to even an inference that gender bias impacted either of the separate proceedings that resulted in him being suspended for multiple violations of the Policy.

## A. Compliance with the Title IX Regulations and Related Guidance Does Not Give Rise to an Inference of Gender Bias.

Plaintiff alleges that the University was under pressure from the federal government and the campus community to "vigorously prosecute males accused of sexual assault." Comp. ¶¶ 121-160, 164, 167, 175. These allegations are not remotely sufficient to allege gender bias because it is well-established that "general allegations about public pressure to resolve sexual assault complaints are insufficient to show that gender bias was the motivating factor" in reaching an

erroneous result in a Title IX proceeding. *Columbia Coll. Chi.*, 299 F. Supp. 3d at 953. Here, Plaintiff fails to make any allegations that would allow the Court to infer a causal connection between these general allegations and the specific University proceedings relating to him.

Not only does Plaintiff fail to link the U.S. Department of Education's 2011 Dear Colleague Letter ("the 2011 Letter") to his own proceedings, but even if he did, courts (including the Seventh Circuit) have repeatedly held that compliance with the standards set forth in the 2011 Letter is not evidence of sex discrimination. *See Columbia Coll. Chi.*, 933 F.3d at 855 (affirming dismissal of Title IX claim where plaintiff argued 2011 Letter demonstrated anti-male bias, because "the [2011 Letter] applies equally to male and female students accused of sexual assault"). Moreover, by the time of the proceedings at issue here in 2021, the 2011 Letter had been revoked and is therefore irrelevant.[8] *See Doe v. Loyola Univ.-Chi.*, No. CV 7293, 2021 WL 2550063 at *7 (N.D. Ill. June 22, 2021) (noting that universities "faced no threat of federal investigation or loss of federal funds in 2020 for failing to adhere to the rescinded 2011 Letter"); *Samford Univ.*, 29 F.4th at 692 (noting that assertions about the 2011 Letter "that [had] been rescinded and replaced [did] not assist [plaintiff] in crossing the line between possibility and plausibility of entitlement to relief") (quotations omitted). This same logic must apply to Plaintiff's assertions about "the Obama White House," because at the time of the proceedings in this case the Obama Administration had been out of office for five years and could not enforce any Title IX provisions, let alone do so to the detriment of Plaintiff. *See* Comp. ¶¶ 146, 152, 155, 159.

---

[8] Plaintiff alleges that the 2011 Letter, "while now revoked, was in effect when *Columbia's* [sic] disciplinary procedures were put in place and the alleged sexual assault occurred in this case," but also acknowledges that the alleged sexual misconduct occurred in 2020 and 2021. Comp. ¶¶ 121, 164, 1 (emphasis added). In various parts of his Complaint, Plaintiff identifies other institutions—such as Columbia University and Luther College—rather than identifying *the University of Chicago*. *See, e.g., id.* at ¶¶ 117, 121, 155, 170.

Finally, although Plaintiff alleges that there was pressure on campus to "vigorously prosecute males accused of sexual assault," he fails to allege with any specificity what, if any, pressure the University of Chicago faced, instead providing examples of pressure at Harvard Law School and Columbia University. *See* Comp. ¶¶ 160, 130, 167. These examples cannot give rise to a plausible allegation that the campus community *at the University of Chicago* was pressuring the University to disproportionally find males responsible for sexual misconduct. Indeed, the Seventh Circuit has at least twice rejected Title IX claims premised on far less vague and nonspecific allegations of pressure on a university to act with anti-male bias. In *Doe v. University of Southern Indiana,* the plaintiff "point[ed] to social media posts, an online petition, and a student newspaper article that all criticized the university for its inaction on [the] complaint [filed with the university against him]," yet the Court held that these allegations did not support "circumstantial evidence of bias." 43 F.4th 784, 792-93 (7th Cir. 2022). Moreover, in *Columbia College*, the Court dismissed a Title IX claim despite allegations that there were specific events on campus and "[university-]sanctioned social media posts" which "demonstrate[d] an anti-male bias." 933 F.3d at 855.

Only in *Doe v. Purdue University* were allegations of external pressure found "relevant to plaintiff's case," specifically because "a Title IX coordinator, who 'bore some responsibility for [the school's] compliance [with the 2011 Letter],' ultimately decided the merits and sanction in plaintiff's case, and the school was subject to a federal Department of Education investigation for Title IX compliance" at the relevant time. *Univ. of S. Ind.*, 43 F.4th at 793, quoting *Doe v. Purdue Univ.*, 928 F.3d 652, 657-68, 668-69 (7th Cir. 2019). Here, Plaintiff's allegations are even more generalized than those in *University of Southern Indiana* and *Columbia College*, failing entirely to meet the bar in *Purdue University*. In sum, because Plaintiff fails to plead how any external

factors impacted his proceedings at the University, let alone that they did so in a way that resulted in gender bias, his allegations are insufficient to state a claim under Title IX.

**B.     The Alleged Procedural Defects Plaintiff Cites Are Not Sufficient to Allege Gender Bias.**

Plaintiff also identifies various alleged procedural violations (*see* Compl. ¶¶ 36, 63, 72, 73, 86, 97, 105, 106, 110, 175), but he fails to link any of them to his sex or gender and thus fails to state an actionable Title IX claim. It is not enough for Plaintiff to allege a procedural irregularity occurred in a sexual misconduct proceeding. Rather, he must also "allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *See Columbia Coll. Chi.*, 299 F. Supp. 3d at 953 (citation and quotation marks omitted); *see also Univ. of S. Ind.*, 43 F.4th at 793 ("[A] plaintiff cannot prove gender discrimination by merely identifying mistakes or imperfections in the process."); *Doe v. Citadel*, No. 2:21-cv-04198-DCN, 2022 WL 2806473 at *10 (D. S.C. July 18 2022) (dismissing Title IX claim for failing to allege how hearing board's "actions, even if improper, were motivated by gender"); *Doe v. Univ. of Mass.-Amherst*, No. 14-30143-MGM, 2015 WL 4306521 at *9 (D. Mass. July 14, 2015) (dismissing Title IX claim because assertions of gender bias were "unsupported by even minimal data or credible anecdotal references" and were thus "the type of conclusory statements that *Iqbal* and *Twombly* do not allow the court to consider").

For example, in *Columbia College*, the plaintiff alleged that the college committed a procedural error by not providing him access to the sexual misconduct complaint until after the college had completed its investigation and scheduled a disciplinary hearing. 299 F. Supp. 3d at 946. Nonetheless, the court dismissed the case (and the Seventh Circuit affirmed) because plaintiff failed to "identify specific facts or comments" indicating that this procedural error occurred because he was a man. *Id*. at 954. Here, Plaintiff points out minor alleged flaws in the University's

12

proceedings. Like the plaintiff in *Columbia College*, however, Plaintiff fails to allege that these alleged procedural flaws had anything to do with his gender. For example, Plaintiff alleges that a member of the Committee hearing panel joined the hearing late, Compl. at ¶ 86; that he learned the outcome of one of the proceedings nine days after the deadline noted in the University's policy, *id.* at ¶ 110; that he received Roe 2's complaint late, *id.* at ¶ 106; that his attorney was prevented from contacting Roe 2 in violation of "proper procedure," *id.* at ¶ 105; and that an administrative delay prevented him from receiving a copy of text messages he had sent to Roe 2 and one of her witnesses, *id.* at ¶¶ 35-36. However, these alleged "mistakes or imperfections in the process" do not raise an inference that they had anything to do with his gender.

In a few instances, Plaintiff does attempt to allege that procedural flaws occurred because of bias against men, but these allegations are nothing more than conclusory assertions that are insufficient to support a Title IX claim. *See e.g. Princeton Univ.*, 790 Fed. App'x at 383-84 (affirming dismissal of Title IX claim, despite plaintiff's "grievances about how the process was conducted and how he was treated," because there were no facts alleging that university "treated him differently because of his sex"). For instance, Plaintiff alleges that an email exchange in which the Title IX Coordinator mistakenly referred to the emergency removal policy as the supportive measures policy and failure to reply to a follow-up email "reflected the gender bias that [Plaintiff] faced." Comp. ¶¶ 71-72. Plaintiff fails to explain how mixing up policy names and failing to reply to an email had anything to do with his gender. Such mere conclusions are insufficient.

Moreover, as explained above, Plaintiff *admits* that he engaged in certain conduct at issue in the proceedings and that he was responsible for sexual harassing Roe 2. *See* Compl. ¶ 180. These admissions defeat any inference that there was a "sham grievance process" like the one described in *Purdue University*, in which the decisionmakers "found that [the plaintiff] committed sexual

13

assault despite never hearing directly from the other party," was not provided a copy of the investigative report that omitted "favorable evidence that he had submitted" and was not read by all decisionmakers, and "was barred from presenting witnesses." Here, Plaintiff's allegations do not involve "such significant and slanted procedural irregularities" that they "could, if proven, support an inference of sex bias." *See Univ. of S. Ind.*, 43 F.4th at 794, citing *Purdue Univ.*, 928 F.3d at 657, 669-70. Rather, this case is (again) more similar to *Columbia College*, as Plaintiff reviewed relevant information, submitted evidence, identified witnesses, and attended hearings at which both he and his accusers testified. *See* 933 F.3d at 856. There is no indication that any alleged errors impacted the outcome of the proceedings, let alone that they were the product of gender bias. Thus, Plaintiff's allegations of procedural error are also insufficient.

### C. An Allegedly False Allegation of Sexual Misconduct By Another Student Does Not Constitute Sex Discrimination by the University.

Plaintiff also asserts the conclusion that Roe 1 and Roe 2's allegations were "obviously false." Compl. ¶ 1. As previously discussed, the Complaint itself supports the accuracy of many of Roe 1's and Roe 2's allegations, and thus they were *not* obviously false. However, even if the complainants' allegations were false, there is no reasonable inference that the *University* acted with anti-male bias in addressing them. *See, e.g., Columbia Coll. Chi.*, 299 F. Supp. 3d at 951 ("a false accusation of sexual assault is not, without more, harassment based on sex, notwithstanding the sexual content of the accusation") (quotations omitted). Plaintiff asserts that the journal entries used in the Roe 1 proceedings were "made up" and the (male) investigator "effectively assist[ed] [] Roe 1 in the manufacture of false evidence" by merely allowing these entries to be considered. Compl. ¶ 76. Although Plaintiff alleges in a conclusory fashion that these actions reflect "gender bias," *id.*, allowing a hearing panel to consider the parties' evidence is *not* gender bias even where one party believes the other's evidence to be false. Indeed, Plaintiff testified to the Committee (*id.*

14

at ¶ 81) and therefore had the opportunity to present his position that the journal entries were false at that time. Plaintiff's allegations amount to nothing more than a disagreement with the outcome of the University's proceedings. They do not state a claim under Title IX.

### D. Taking Student Complaints of Sexual Misconduct Seriously Does Not Give Rise to an Inference of Gender Bias.

Plaintiff alleges that the University's commitment to supporting victims of sexual misconduct is evidence of bias against men or "favoring" women. Comp. ¶ 174. Although Plaintiff conflates his status as a man with his status as a person accused of sexual misconduct, his allegations cannot possibly support an inference of anti-male bias in any event. In *Columbia College*, the court emphasized that an alleged bias in favor of sexual assault *victims* does not constitute gender bias against men. 299 F. Supp. 3d at 955 (finding allegations regarding differences between the parties with regard to providing access to documents and how they were questioned insufficient to allege gender bias); *see also Samford Univ.*, 29 F.4th at 690 ("discrimination against respondents is not discrimination on the basis of sex . . . and does not permit a reasonable inference of an anti-male bias because both men and women can be respondents.") (quotations omitted). Furthermore, because "disparate impact claims are not permitted under Title IX, [P]laintiff's claim could not survive merely by alleging that the university's other gender-neutral policies had a disproportionately harmful effect on men." *Columbia Coll. Chi.*, 299 F. Supp. 3d at 954.

Here, Plaintiff makes allegations which, at best, might permit an inference that the University treated individuals who allege experiencing sexual misconduct differently from those alleged to have engaged in sexual misconduct. For example, Plaintiff alleges that "trauma-informed techniques based on pseudoscience allow authority figures to encourage alleged victim to create exaggerated or false memories," but he fails to allege that the University uses such

practices at all, let alone in his case. Comp. ¶ 171. Plaintiff makes other allegations completely untethered from the facts of this case when he claims that "the phrase 'believe all women' means that when a female accuses a male of sexual misconduct, she is a 'survivor' and her accusations are presumptively true." *Id.* at ¶ 171. Plaintiff never alleges that anyone involved in his case said anything like this. *Id.* at ¶ 62; *see also id.* at ¶ 172 (referring to "gender identity politics" without defining the term or alleging any connection to the proceedings at issue in this case).

When Plaintiff does make allegations specific to his own proceedings, he offers nothing to support his conclusory assertions of gender bias. For example, Plaintiff alleges that the Committee asked him questions about how much he had to drink, but did not ask Roe 1 such questions. Comp. ¶ 81. As the court in *Columbia College* noted, however, there are many reasons other than gender which could explain why Plaintiff and Roe 1 may have been questioned slightly differently. *Columbia Coll. Chi.*, 299 F. Supp. 3d at 955 ("[The college] may have questioned [plaintiff] more aggressively because his version of the facts was not consistent or questioned the alleged victim more gently to ensure she was not intimidated into not speaking out."). Plaintiff also alleges that the University provides health and legal services for complainants but not for respondents, Compl. ¶ 173, but again fails to allege any facts that could possibly support an inference that, even if true, this has anything to do with gender (or the facts of this case). Plaintiff also alleges that the University failed to apply the current Title IX regulations (which went into effect in 2020) by failing to apply the proper burden of proof, Comp. ¶ 175, without pleading any facts to support this conclusory allegation or pleading that the University has used a different burden of proof for a woman accused of sexual misconduct.

As emphasized in *Columbia College*, a man alleged to have violated a sexual misconduct policy cannot use as a comparator a woman who has submitted a sexual misconduct complaint

because their status as respondent and complainant are factors divorced from gender. *See* 299 F. Supp. 3d at 955. Plaintiff's allegations are wholly insufficient to allege differential treatment on the basis of sex, as is required to state a viable Title IX claim. As a result, Count I should be dismissed.

## III.     PLAINTIFF HAS NOT STATED A CLAIM FOR BREACH OF CONTRACT.

To state a claim for breach of contract, Plaintiff must allege "(1) the existence of a valid and enforceable contractual promise, (2) a breach of that promise, (3) plaintiff performed his contractual obligations, and (4) resultant damages." *Columbia Coll. Chi.*, 933 F.3d at 858. Moreover, in the student setting, Plaintiff must also allege that the University's conduct was arbitrary, capricious, or in bad faith. *See id.* Plaintiff fails to meet any of these requirements.

### A.     Plaintiff Fails to Identify Any Specific Contractual Promises That Were Allegedly Breached.

Plaintiff vaguely alleges that there was "an express and/or implied contract" created when Plaintiff "accepted an offer of admission" and "paid tuition." Compl. ¶ 186. However, Plaintiff fails to cite any specific provisions that create a binding contract on the parties. "To state a claim for breach of contract, the plaintiff . . . must point to an *identifiable* contractual promise that defendant failed to honor." *Fleming v. Chi. Sch. of Pro. Psych.*, No. 15 C 9036, 2017 WL 4310536, at *3 (N.D. Ill. Sept. 28, 2017). At most, Plaintiff alleges in an entirely conclusory fashion that a "policy" (which he does not attach or quote from)[9] requires the use of "impartial investigators," "impartial hearing officers," and a "preponderance of the evidence of standard," and that the

---

[9] To the extent Count II is premised on the Policy on Harassment, Discrimination, and Sexual Misconduct, the Student Manual (in which the Policy appears) expressly states, "[t]he contents of this manual do not create a contract between any individual and the University." *See* https://studentmanual.uchicago.edu/; *see also Rosenblum v. Travelbyus Ltd.*, 299 F.3d 657, 661 (7th Cir. 2022) (in consideration of Rule 12(b)(6) motion, it is proper to consider documents referred to in complaint). Thus, neither the Policy nor the Student Manual can support a breach of contract claim. *See Packer v. Trs. of Ind. Univ. Sch. of Med.*, 73. F.Supp.3d 1030, 1041 (S.D. Ind. 2014).

University "breached its contract with [Plaintiff] by failing to abide by University policy [], when it failed to have impartial investigators and hearing officers . . . and when it failed to adhere to the preponderance of the evidence standard." Compl. ¶ 187. However, Plaintiff has failed to provide the Court with any specifics regarding these alleged policy provisions, much less allegations from which it could be inferred that a contract was created (let alone breached). Moreover, none of the allegations in the Complaint give rise to an inference that the investigator(s) and Committee members were not impartial, or that some burden of proof other than preponderance of the evidence was used. Count II should be dismissed for these reasons alone.

**B.      Plaintiff Also Fails to Allege that the University Acted Arbitrarily, Capriciously, or in Bad Faith.**

Plaintiff's contract claim also fails because he has not alleged any arbitrary or capricious conduct on the part of the University, nor can he hope to do so. In the student-university setting, a student may allege a viable claim for breach of contract only if that decision was made *arbitrarily, capriciously, or in bad faith. Doe v. Columbia College Chicago*, No. 17-CV-00748, 2018 WL 497284 at *7 (N.D. Ill. Jan. 22, 2018) (dismissing student contract claim arising out of sexual misconduct proceeding for failure to allege process was "arbitrary, capricious, or without any rational basis"). This standard means that a school "would not be liable even if [the Court found] it exercised its academic judgment unwisely; rather it must have disciplined a student without any rational basis." *Columbia Coll. Chi.*, 933 F.3d at 858. In other words, to find for Plaintiff, this Court "must find that [the University] did not exercise its academic judgment at all." *See id*. (quotations omitted); *see also Doe v. Loyola Univ. Chi.*, No. 18-cv-7335, 2022 WL 4535090 at *36 (N.D. Ill. Sept. 28, 2022) (dismissing student's contract claim and noting that "Illinois courts are reluctant to interfere with the academic affairs *and regulation of student conduct* in a private

university setting, so breach of contract claims brought by a student against a private college or university are subject to a distinct standard.") (emphasis in original) (quotations omitted).

Here, Plaintiff's own allegations demonstrate the absence of any arbitrary, capricious, or bad faith conduct. For example, Plaintiff admits he continued seeking sex from Roe 1 even after she had rejected his sexual advances multiple times, Compl. ¶¶ 15-16, and that he continued pressuring Roe 2 for sex even after she said no and that "she did not want to continue," *id*. at ¶ 26. The complainants' testimony coupled with the evidence and witness testimony they submitted as part of the University's process is certainly the type of evidence that could be found to constitute a violation of the Policy without there being a failure to "exercise [] academic judgment at all." *Columbia Coll. Chi.*, 933 F.3d at 858. That Plaintiff disagrees with the Committee decisions that he violated the Policy is not enough to allege arbitrary, capricious, or bad faith conduct.

## IV. PLAINTIFF HAS NOT STATED A CLAIM FOR PROMISSORY ESTOPPEL.

To prevail on a promissory estoppel claim, "a plaintiff must prove (and at the pleading stage, allege) that (1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on the promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to [his] detriment." *Columbia Coll. Chi.*, 299 F. Supp. 3d at 960 (quotations omitted). Plaintiff fails to cite any language which could give rise to an unambiguous promise. Indeed, Plaintiff merely states that "various policies" are the basis for his claim and vaguely alleges there were promises that he "would not suffer[] harassment" and would be entitled to procedural rights. Compl. ¶¶ 192, 103. Courts have consistently "rejected promissory estoppel claims containing similar allegations in Title IX cases, finding that the language in university policies does not constitute the type of unambiguous promise required to support a promissory estoppel claim." *Columbia Coll. Chi.*, 299 F. Supp. 3d at 961; *see also Doe v. Univ. of Chi.*, No. 16 C 08298,

2017 WL 4163960, at *10-11 (N.D. Ill. Sept. 20, 2017) (dismissing promissory estoppel claim premised on University of Chicago's student manual).  Thus, Count III should also be dismissed.

## V.        PLAINTIFF IS NOT ENTITLED TO EMOTIONAL HARM DAMAGES.

Plaintiff's request for emotional and psychological damages under all claims should be stricken under Rule 12(f) because it is well established that these damages are not available as a matter of law. *See Cummings v. Premier Rehab Keller*, 142 S. Ct. 1562, 1576 (2022) (emotional distress damages not available under Spending Clause antidiscrimination statutes including Title IX); *Patton v. Univ. of Chi. Hosps.*, 706 F. Supp. 627, 632 (N.D. Ill. 1989) ("Illinois law does not permit compensation for mental distress resulting from a breach of contract.") (referencing *Maere v. Churchill*, 452 N.E.2d 694, 697 (Ill. App. Ct. 1983)); *Schumann v. CITGO Petroleum Corp.*, No 99 C 4805, 2000 WL 528527 at *4 (N.D. Ill. Apr. 24, 2000) (ruling that emotional distress injuries may not be recovered under promissory estoppel theory).

## <u>CONCLUSION</u>

For the reasons stated above, and in its Motion to Dismiss, Defendant University of Chicago respectfully requests that this Court enter an order dismissing all claims in the Complaint with prejudice and granting such other relief as the Court deems just and proper. If the Court declines to dismiss Plaintiff's claims in full, his claims for emotional and psychological distress damages should nonetheless be stricken.

Dated: December 19, 2022                    Respectfully,

                                           /s/  Scott Warner_____

                                           Scott L. Warner

                                           *Counsel for Defendant*
                                           *University of Chicago*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that he caused the foregoing document to be filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification to all registered counsel of record this 19th day of December, 2022:

Philip A. Byler
Andrew T. Miltenberg
Jordan Tuchman
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
212-736-4500
pbyler@nmllplaw.com
amiltenberg@nmllplaw.com
jtuchman@nmllplaw.com

Michael Cheronis
The Law Offices of Michael D. Cheronis
2502 N. Clark St.
Chicago, IL 60614
773-255-1430
mdc@cheronislaw.com

*/s/* Scott Warner

*Attorney for Defendant*
*University of Chicago*

x