# EXHIBIT B

# APPENDIX B – REQUEST FOR APPEAL ON JANE ROE 1 OUTCOME

Dean Rasmussen,

I am formally requesting a review of the University-wide Disciplinary Hearing and Sanctions that commenced on 3/25/22. I was found responsible of sexual assault and misconduct and sanctioned with a four-quarter suspension, which I am currently serving, and to complete an educational component on preventing sexual misconduct. I am submitting my request for review based on the following grounds: (1) Prescribed procedures were not followed; (2) the sanction is disproportionate to the violation. Detailed information supporting my request is below:

**1. Prescribed Procedures were not followed:**

At the outset of the hearing, the investigator, Dean Jeremy Inabinet, volunteered information regarding the reliability of particular evidence submitted by Complainant. Per the outline for the University-wide Disciplinary Committee Proceedings, the investigator is subject to questions from the Committee and/or the parties if/when they choose to pose questions to the investigator. Pursuant to the University policy, the investigator is a neutral fact finder, not a witness allowed to opine on the weight and sufficiency of evidence. Commenting on the evidence within the hearing is not his job. Despite this, the substantive portion of the hearing commenced with Dean Inabinet informing the Committee - unprompted - as to how he vetted a journal submission that Complainant included in her optional response. The Hearing Committee did not ask the investigator any question about the journal. The University Outline for the hearing process does not grant the investigator any authority to volunteer information, in effect to testify as a witness to the sufficiency of evidence, that could affect the outcome of the hearing.

Not only did the investigator volunteer testimony that gave credence to last minute evidence submitted by Complainant, he also omitted a key fact related to such evidence. Inabinet failed to tell the Committee that Complainant submitted her journal entries three days prior to the hearing despite claiming she had this journal since December 2020. It was not submitted with her complaint or during the five-month long investigation process. In contrast, Inabinet said nothing about the credibility of the evidence I submitted, which amounted to close to 30 pages of direct electronic communication with the Complainant after the alleged incident and other evidence that impeached the credibility of Complainant. Thus, I was disadvantaged from the start of the hearing by the investigator's partial and biased statements and decisions.

After the close of the investigation the investigator continued his investigation, in violation of University policy, by allegedly vetting the journal that was submitted by the Complainant in her optional response. The University policy does not give the investigator authority to do so following the close of the investigation. He told the Committee a third-party not involved in the case showed him the journal via Zoom and that it appeared as if it was an entry in a journal. In the outcome letter I received, the Committee stated: "the Committee determined the Complainant's version of the events was more credible, in part because she chronicled the experience in her journal, made disclosures to multiple people in the days following the incident, and her narrative was consistent and aligned with the evidence provided." This was evidence that the Committee specifically relied upon, in its findings, to corroborate Complainant's allegations. The disclosures the Complainant made to her witnesses were not made in the days immediately following the incident and fail to corroborate the Complainant's account. The Complainant's witnesses, [Jane Roe 1 – Witness 1] and [Jane Roe 1 – Witness 2], do not describe Jane Roe 1's disclosures in any specificity or detail. [Jane Roe 1 – Witness 1] reported that the Complainant told her about the incident "within a week or two." Her account of

the conversation with the Complainant does not describe a sexual assault or abuse incident, nor does it describe or corroborate any of the claims the Complainant made about my behavior in her complaint. [Jane Roe 1 – Witness 2] account states: "Jane Roe 1 spoke to [Jane Roe 1 – Witness 2] during their first year about her interaction with John Doe. All that [Jane Roe 1 – Witness 2] can recall is that it involved some type of intimacy. Jane Roe 1 kept it vague." The Committee could not possibly leverage these witnesses' vague statements to corroborate the specific and serious allegations the Complainant made.  In truth, the Committee relied upon the investigator's statements about the authenticity of the journal and the journal itself for corroboration of Complainant's allegations.

The investigator did not notify me, as the Respondent, via email that he had vetted the journal nor did he mention he would raise it at the hearing. He said via email two days before the hearing that he would notify all parties, including the Committee of his efforts to vet the journal, which he did not do before the hearing. According to Inabinet's opening statements in the hearing, a third-party not involved in the case showed him the journal via Zoom supposedly on the day before the hearing. He did not notify me, the Complainant, or the Committee of this via email. I have included the entire chain from my conversation with him about my issues with the Complainant's optional response and never received a reply to my last email in the chain.

[redacted] Wed, Mar 23, 12:13 AM

Dean Inabinet,

I am sending this note to discuss [redacted] optional response. I find it disingenuous and unfair that she withheld evidence that she included in her optional response that I cannot address in my written documentation to the committee. She had multiple opportunities to submit some of the evidence she is claiming such as with her initial complaint, or during the 5-month long investigation that you conducted. As the investigator, you did not have the ability to question or vet the additional documentation she submitted today during her interview. Mike and I were not able to review these while drafting my optional response. She basically has the last word on unanswered evidence going to the committee because she did not decide to submit it until now.

The additional evidence that I submitted as part of my optional response was in response to her witness statements in the investigation report. Things to note:

- She claims the last time she saw me in my apartment was on 9/2/21. I was in Paris [redacted] from 9/1 - 9/5
- She submits text messages from a friend who does not even go to [redacted], nor does she live in Chicago.
- She strategically waited until I no longer have access to one of our organization's shared drives to submit an excel file of our co-chair applications. I cannot validate whether she did or did not edit her submission on the drive.
- Her journal screenshots could have been fabricated to corroborate her story - if she had these before she would have submitted them with her complaint or during the investigation.

The fact that I now only have the hearing to address the above points is not fair. You told me once the investigation report was released we had one week to submit an optional response and only key evidence or key witnesses would be entertained after the investigation report being published. The above points refer to non-key evidence and witnesses. They should be allowed to be included in an appeal process, but not in the hearing process set for this Friday. She is only trying to cloud the comittee's fair and impartial judgement.

I sincerely hope you review my request to remove these sections from [redacted] optional response.

[redacted] Mar 23, 2022, 1:07 PM

Dean Inabinet,

Can you please respond to my note? I am happy to discuss over the phone as well. I am free anytime.

[redacted]

**Jeremy W Inabinet** Mar 23, 2022, 1:09 PM
to me

[redacted]

Yes. I am in the process of putting together a response. I will have something to you shortly.

...

# APPENDIX B – REQUEST FOR APPEAL ON JANE ROE 1 OUTCOME

**Jeremy W Inabinet** Mar 23, 2022, 3:45 PM
to me

[redacted]

Thank you for the email.

I understand your concern and I can let you know what your options are.

As stated in the letter I sent you on March 14, 2022:

> Case folders will be distributed to the committee next week, with optional responses being added in after the deadline. After that time, only significant new information will be considered for inclusion in the case materials.

This and the conversation we had yesterday addressed information being added *after* the optional responses were received. As I told you, in that situation, the Faculty Chair would decide whether to consider the new information and to be considered, the information would need to be significant. Inclusion of new information in an optional response is permissible.

I am working with the Complainant to validate the authenticity of the journal and the entries shared. I will provide the outcome of that endeavor to the Committee and both parties.

The information you shared with me under "Things to note" would need to be shared by you, with the Committee, during the hearing. This can come in the answer to a question, in a suggested question for the Complainant, and/or in your closing statement. As I stated in our pre-hearing meeting, if there is anything you want the Committee to know after the optional response, it would need to come from you using those three opportunities. I also mentioned if you wanted the possibility of the Committee discussing something with you (or the other party), it would need to come prior to your closing statement.

Let me know if you have any additional questions.

The journal was submitted as part of Complainant's optional response and I had no time to adequately review it before my hearing. Per section 16 in the policy, under access to information, The Complainant, the Respondent, and appropriate University officials will receive timely and equal access to information that will be used during the Investigative/Hearing Body Resolution process. The University-wide Disciplinary system Policy states that "The complainant should make every effort to include in the complaint all germane facts known at that time and provide all available supporting materials." This rule was ignored by the Complainant and disregarded by the investigator. I received access to the Complainant's optional response two business days prior to the date of the hearing. The Complainant's last-minute inclusion of the journal evidence in her the optional response should have resulted in an extension of the hearing date to allow for a thorough investigation of this new evidence. This would have resulted in a fair and impartial process by which the University could have ensured I was given timely access to all of the evidence. Inabinet could have also told the Complainant that it was too late to include material evidence, that was not new as it supposedly existed since December 2020, and that the Complainant would have to include it as part of an appeal process. Instead, I was denied the ability to review the actual journal, and/or to retain qualified experts to review it for authenticity, fabrication and/or date of origin. In the interest of expediency, my rights were violated. This was especially prejudicial given that the Committee found the evidence compelling and credible as noted in the outcome letter.

It is clear that University policies during the investigation and hearing process were ignored. The University violations of its own policy denied me a fair and impartial hearing. The failure to provide me timely access to evidence that was compelling to the Committee and the investigator's decision to provide a testimony regarding the credibility and sufficiency of that evidence should result in a reversal of the Committee's findings and sanctions.

**2. The sanction is disproportionate to the violation**

# APPENDIX B – REQUEST FOR APPEAL ON JANE ROE 1 OUTCOME

The four-quarter suspension I received was excessive in light of both recent University sanctions for the same offense and the measures taken by the University during the investigation. The University provides statistics on disciplinary violations and sanctions for review. Such a review shows that in the past four years only one Respondent who was found responsible for sexual assault was sanctioned with a suspension of four or more quarters for their first offense. All other Respondents found in violation of the University's policy on sexual assault were sanctioned with no more than a three-quarter suspension. One Respondent received probation. No graduate student has received more than a three-quarter suspension over the past four years after being found responsible for a first offense of sexual assault. While I understand that I was found responsible for multiple policy violations (sexual abuse and sexual harassment as well as assault), these were the result of the same incident. It is reasonable to assume that Respondents found responsible for non-consensual sexual contact are often also found responsible for abuse and harassment directly related to those contacts. But, unlike other Respondents in similar situations, the length of suspension was extreme. The four-quarter suspension I received is disproportionate to other University sanctions for the same offense.

During the investigation, the University imposed supportive measures that should have been considered by the Committee when determining sanctions. I was banned from campus, University events, trips, and stripped of all my leadership positions during the five-month long investigation. These measures were, in effect if not intention, punitive. The Committee specifically noted the factors they considered in determining sanctions. They were aware of the measures because I repeatedly pointed them out at the hearing and in the investigation report. They should have, but did not consider, the supportive measures when determining sanctions. The restrictions on my access to education and University programs were detrimental to me. I lost networking and employment opportunities. I was forced to remain off-campus and take classes virtually. The benefits and opportunities afforded to members of the [University] were foreclosed to me. This sanction has caused me to lose access to my federal loans, scholarship funding, and health insurance, making it impossible to afford my psychiatrist and psychologist who are currently assisting me with the mental health issues I am facing as a result of this process and sanction. If this finding is not reversed or this sanction is not significantly reduced, I will also lose the full-time job offer I had secured at one of my dream companies. I have one course left to complete to earn my [Degree]. I was already in the process of completing that last course virtually when receiving notice of being suspended. Please take all of these factors into account.

I hope you will consider the latest guidance from the Office of Civil Rights. The OCR requires that schools consider the impact of separating a student from his or her education by imposing a sanction such as suspension or expulsion when enforcing the school's code of conduct. Remedies for a Complainant when the Respondent was found responsible must be designed to restore or preserve equal access to the school's educational program. The Respondent in this matter is graduating in June and will no longer be at the University.

In summary, I am asking the Appeal Committee to reverse the finding of the Hearing Committee based on a violation of my procedural rights. Should this Committee deny that request, I am asking that the Appeal Committee reduce the sanction to two quarters because it is disproportionate to the violation based on the aforementioned factors and previous sanctions given to students found guilty of similar offenses. Thank you for your time and consideration.

# APPENDIX B – REQUEST FOR APPEAL ON JANE ROE 1 OUTCOME

[Signed John Doe]