# EXHIBIT C

# APPENDIX C – REQUEST FOR APPEAL ON JANE ROE 2 OUTCOME

Dean Rasmussen,

I am formally requesting a review of the outcome and sanctions from the University-wide Disciplinary Hearing on 3/31/22 that I was a Respondent in. I accepted responsibility for sexual harassment, and although I did not accept responsibility for the sexual abuse violation, the committee found me guilty of both sexual harassment and abuse violations. I was sanctioned with a three-quarter suspension, and a plethora of other restrictions detailed in the outcome letter that will be enforced after my suspension. I am submitting my request for review based on the following grounds: (1) Prescribed procedures were not followed; (2) the sanction is disproportionate to the violation. Detailed information supporting my request is below:

**1. Prescribed Procedures were not followed:**

The University acted unfairly by not allowing my attorney to reach out to the Complainant during the course of the investigation to offer alternative resolution methods, such as mediation. The NCD I received specifically stated that attorneys acting in an official capacity could reach out to the Complainant. Per the email exchange below, Dean Inabinet did not allow my support person to discuss alternative resolution options with the Complainant because she did not have an attorney. The Complainant deciding not to engage legal counsel in this matter should not have prevented my attorney from proposing resolution options that were allowed in the student manual, especially since this alleged incident did not include a sexual assault charge.

[redacted]

Nov 16, 2021, 7:51 PM

Dean Inabinet,

I had a couple follow up questions from our call yesterday:

- Can my attorney reach out to the complainant in this situation to offer up the idea of her proposing mediation? Per the NCD language, it states contact is prohibited from "Indirect contact through friends, family, associates, or others **(not including attorneys acting in an official capacity).**"
- If a hearing panel determines a suspension is the appropropriate sanction - are suspensions effective immediately or do they take place at the start of new quarters? I am asking this because I know you mentioned this process may drag well into next quarter.

Please advise and thank you for your time.

[redacted]

**Jeremy W Inabinet** <inabinet@uchicago.edu>
to me

Nov 18, 2021, 10:13 AM

[redacted]

Thank you for the email. I will address your questions below:

1. No. Your support person cannot make outreach to the Complainant on your behalf, based on the No Contact Directive. If the Complainant had legal counsel, your attorney could contact her attorney, but she is not currently represented to my knowledge.

The guidelines for the University-Wide Disciplinary System state that the *"Associate Dean will provide the respondent with access to the complainant's written statement and the respondent will be required to provide a written response to the complaint."* Section 16 of the Policy, under Access to Information, states that *"The complainant, the respondent, and appropriate University officials will receive timely and equal access to information that will be used during the Investigative/Hearing Body Resolution process."*

I did not receive the **actual** complaint the Complainant submitted until around six weeks after my response to the Complaint was due (12/15). Inabinet claims that I was "given access to all of the information that was provided to him" at the time of the complaint being submitted. I know

that this was not the case because the Complainant sent out her complaint letter to many students at [the University]. Her complaint letter was sent around to me from other parties. I noticed that I had received a different version of the complaint and none of the messages that the Complainant claimed were "attached to the report". As the investigator, Inabinet represented the University in this investigation. It is clear the University withheld information and evidence from me that it received at the time the complaint was submitted and thus Inabinet did this intentionally or was negligent – either way it put me as a disadvantage in the investigation.

Under Section 18 of the Policy, Required Training for Policy Personnel, many deviations from prescribed procedures were made.

The Policy states, "*Any person serving as an Investigator will receive training on issues of relevance to create an investigative report that fairly summarizes relevant evidence."* Inabinet incorporated faulty and egregious witness statements in the investigation report in order to bolster the Complainant's credibility. As an impartial investigator, he should have removed facts he knew to be false, or clarified ambiguous statements from witnesses in order to ensure the information being compiled in the report from witness statements was accurate.

Most notably, Inabinet should have removed the following statement from [Jane Roe 2 – Witness 1] witness statement; *"There was not full penetration, but [John Doe] exposed himself and pinned [Jane Roe 2] down. [John Doe] was essentially assaulting [Jane Roe 2]."* Not only does [Jane Roe 2 – Witness 1] make a defamatory and false claim of saying there was any penetration of Jane Roe 2 – something the Complainant did not even accuse me of – [Jane Roe 2 – Witness 1] also accuses me of another policy violation, sexual assault, that I was not even charged with. Her sentences preceding her false claim are written in a manner to make it seem like [Jane Roe 2 – Witness 1] was an eyewitness to the alleged incident, which she was not. Section 19 of the policy states *"It is also a violation of this Policy for any person to knowingly make a materially false statement during the course of an investigation, hearing, or request for review under this Policy."* Inabinet not only broke section 18 of the policy by unfairly summarizing evidence, but also section 19 because he included information he knew to be false and did not even address the witnesses' false statement with her under the student manual.

Jane Roe 2's second witness, [Jane Roe 2 – Witness 2], provided a vague/general account of the incident. Inabinet again failed to properly investigate claims made by this witness by not confirming when this supposed call with Jane Roe 2 occurred. [Jane Roe 2 – Witness 2] claims that he *"remembers the call from [Jane Roe 2] being between October 21-25, 2021, while he was in Florida."* The witness here claims that he received a secondhand summary of the incident on a call from the Complainant between a five-night span (where we know the call could not have occurred on two of the nights (21-22)). If the witness actually received a call from the Complainant, he should have been able to state what day and time this call occurred since his phone would have a timestamp of it and Inabinet, if doing his job as a properly trained impartial investigator, should have asked the witness to provide this in order to ensure his statement's validity.

I requested that the hearing be in person and pushed back in order to provide a fairer process. While I was given an extension to the date my optional response was due, I was denied of my other requests, which are detailed in the images below. I would like to point out that one of the committee members in my hearing, Craig Hogan, was not able to join until 130 PM CT due to an apparent internet outage, causing a half an hour delay to the hearing start time. In addition, Mr.

# APPENDIX C – REQUEST FOR APPEAL ON JANE ROE 2 OUTCOME

Hogan had to dial-in by phone and was never on camera during the entire hearing. Mr. Hogan asked the fewest number of questions out of all of the committee members (I remember him only asking one question) and it was impossible to tell if he was even engaged since he was not on camera and did not ask more than two questions throughout the entire meeting. I requested an in-person hearing to prevent the possibility of something such as the aforementioned incident happening. At the time of the hearing, the University had lifted all of its COVID-19 related protocols and this hearing should have occurred in person. As the party in the hearing who was facing possible sanctions, I was more disadvantaged than the Complainant as a result of this.

[redacted]

Mar 18, 2022, 11:26 AM

Dean Inabinet,

I read the policy again. Under the investigation section, the policy states "*The parties will have 5 business days to submit an optional written response statement. These statements will be added to the final investigation report that is provided to the Disciplinary Committee.*"

Then under the Resolution section, which is a subsequent section to the investigation section previously mentioned, it states: *"The Associate Dean will notify the complainant and respondent, via e-mail, of the date, time and location of the disciplinary hearing before the Disciplinary Committee no later than ten business days prior to the hearing. Both parties will be asked to appear at the hearing. At the request of the Faculty Chair for the Disciplinary Committee, the Associate Dean may also ask pertinent witnesses to appear at the hearing. The Disciplinary Committee, complainant and respondent will receive the final investigation report and all materials germane to the hearing proceedings no later than 5 business days prior to the hearing date."*

My rationale for requesting an extension to the date of the [redacted] hearing based on the policy is detailed below:

- Spring break should not count as business days and I have already agreed to participate in one hearing with less than a 10 day notice. I will not do that for two hearings. As of now the [redacted] hearing is scheduled for 3/31. Even with notice on 3/11 that only equates to 9 business days before the hearing. (3/11, 3/14 - 3/18, 3/28 - 3/30; totals 9 business days).
- My optional response is due on 3/24 and I will not be able to make that deadline as I have another hearing to prepare for on 3/25. Thus the committee will not have 5 business days prior to the hearing to review the complete investigation report and all other materials.

I have made concessions to the timelines for the [redacted] hearing, but will not do so for both hearings. The University has to follow the dates stated in its policy.

Lastly, I want to circle back on a request that I previously made on 3/13. Can the hearings be in person? The University has lifted its mask mandate and COVID restrictions as of the end of the Winter quarter, so I do not understand why such important meetings with potentially life altering outcomes would still be conducted via zoom. What is the rationale for having these meetings virtually? COVID is no longer a valid excuse. Please advise.

[redacted]

**Jeremy W Inabinet** <inabinet@uchicago.edu>
to me

Mar 18, 2022, 4:36 PM

[redacted]

Thank you for the clarification, this is helpful.

A business day is a day the University is open and operational. The University does not close for spring break.

We are currently not holding hearings in-person. We have been holding hearings via Zoom since the start of the pandemic and there is no evidence to suggest the medium is any less or more favorable to participants.

Do you have a request by when you would want to submit your optional response for the hearing on March 31?

...

[redacted]

Mar 18, 2022, 5:50 PM

Dean Inabinet,

I would like to have until Monday March 28th @5 PM CT to submit my optional response for the [redacted] hearing.

[redacted]

# APPENDIX C – REQUEST FOR APPEAL ON JANE ROE 2 OUTCOME

[redacted]

Apr 12, 2022, 1:14 PM

Dean Inabinet,

In your previous email you stated: *"We are currently not holding hearings in-person. We have been holding hearings via Zoom since the start of the pandemic and there is no evidence to suggest the medium is any less or more favorable to participants."*

I hope you take my hearing on 3/31 as evidence that the Zoom medium for conducting disciplinary hearings is less favorable to participants, and especially the respondent since they are the side that is potentially sanctioned as a result of these hearings. One of the committee members in my hearing, Craig Hogan, was not able to join until 130 PM CT due to an apparent internet outage, causing a half an hour delay to the hearing start time. In addition, Mr. Hogan had to dial-in by phone and was never on camera during the entire hearing. Mr. Hogan asked the fewest number of questions out of all of the committee members and it was impossible to tell if he was even engaged since he was not on camera and did not ask more than two questions throughout the entire meeting.

I requested an in-person hearing to prevent the possibility of something such as the aforementioned incident happening. At the time of the hearing, the University had lifted all of its COVID-19 related protocols and this hearing should have occured in person. I hope future individuals going through this process are not subject to the same disruptions when they are already dealing with something so serious and with the potential to negatively alter their futures.

[redacted]

**Jeremy W Inabinet**
to me

Apr 14, 2022, 10:23 AM

[redacted]

Thank you for letting me know about your experience.

During the actual disciplinary hearing on 3/31, two of the committee members acted in a biased manner against me. The Policy states that committee members be trained on *"how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias*." The Complainant did not submit an optional response. She did not do so because she either did not want to respond to the investigation report or did not care enough to write one. The faculty chair, Susanne Paulus, asked the Complainant in the hearing if there was anything she wanted to add to her statements since she did not submit an optional response. This gave the Complainant the opportunity to answer an open-ended question and present additional testimony to be considered – I did not receive the same question or opportunity. I submitted "changes to the report" in my optional response. Another faculty member of the committee, Michael Allen, asked the Complainant if she had any proposed changes as well to the investigation report since she did not submit an optional response. I do not understand why the Committee kept giving the Complainant the opportunity to present an optional response when she decided not to submit one. Their questioning should have focused on the event itself, instead of giving the Complainant multiple opportunities to offer a verbal optional response to the investigation report. In addition, when I responded to Mr. Allen's question asking me to summarize my version of the incident, he responded in a sarcastic manner by saying "wow, you seem to have a perfect recollection of the night." He did not make a similar comment after the Complainant gave her account of the night. Inabinet did not reprimand Mr. Allen for making a sarcastic comment. Using a more likely than not standard, I believe you should be able to come to the determination that at least one, if not two, of the Committee members were acting in a biased manner against me. If Mr. Allen was truly impartial, he would have listened to my account, asked a clarifying question if he had one, and moved on, instead of what he actually did, which undermined my credibility to other members of the committee. I have included a screenshot I sent to my support person the night of the hearing as evidence that this occurred.

# APPENDIX C – REQUEST FOR APPEAL ON JANE ROE 2 OUTCOME




According to the guidelines for the University-Wide Disciplinary System, *“The complainant and respondent will receive simultaneous formal and written notification of the outcome, including information regarding requesting review, within 5 business days of the hearing.”* It is true that Inabinet told me in my informal notification that I would receive the outcome letter within 14 days, but regardless of what is said informally, this entire process has to be governed by University policy. The applicable policy states that I should have received a formal outcome letter within five days. I had to wait 14 days to receive such letter that was mostly made from a copy and paste of the complainant's complaint and standard language. This extra time to receive my formal outcome letter disadvantaged me as the Respondent in this situation because the suspension was imposed the day I received the letter and it delayed my appeal by at least another nine days.

**2. The sanction is disproportionate to the violation:**

The three-quarter suspension, plus the other sanctions, I received were excessive in light of both recent University sanctions for more severe offenses and the measures taken by the University during the investigation. The University provides statistics on disciplinary violations and sanctions. Such a review shows that in the past four years no respondent who followed their NCD was suspended for violating the policy solely based on sexual harassment and sexual abuse violations. I strictly adhered to the NCD I received and all of the interim (punitive) measures the Title IX Office imposed on me throughout the investigation. In other correspondence to me, you noted that these reports do not “function as a sanctioning guide for disciplinary committees and its contents should not be considered as setting precedents or limits on the sanction options available to committees…”. Yet earlier in the same correspondence you state “These are serious breaches of the conduct expected of students at the University, which separation is both appropriate and precedented.” It seems to me that the University leverages an inconsistent standard for using precedence. If these disciplinary reports and prior cases are not to be considered for setting precedents or limits on sanctioning options, then why are they used to determine acceptable precedent that separation from the University is appropriate when a student breaches the Policy for such violations? If you correct this inconsistent rationale in your review process and analyze what the University has done for similar violations, you will come to the conclusion that the three-quarter suspension I received is disproportionate to the violation. Previous disciplinary history should not exacerbate a sanction if the University is true to its statement that disciplinary processes for separate incidents and Complainants are to be completely separate.

## APPENDIX C – REQUEST FOR APPEAL ON JANE ROE 2 OUTCOME

I would like to reiterate that I was forthcoming and owned up to some of my mistakes in the alleged incident. I understood and stated that my behavior constituted sexual harassment, yet I vehemently decline all of the egregious allegations the Complainant made that relate to the sexual abuse charge. I did not offer her any money for sexual favors, masturbate in front of the Complainant, or touch any part of her body with my private. The Complainant admitted in the hearing that she does not drink, but had decided to drink that night. I provided evidence that she had called me at 230AM, and she made verbal admissions to both drinking and inviting me over at 230AM that night. I do not understand why the Committee fully discredited my testimony during the hearing because in my apology text to the Complainant I noted that I was inebriated. I do not understand why the Complainant's verbal statements did not undercut her credibility, especially when she failed to include key evidence that would have supported her claims, such as video from her building showing that she actually put my clothes in the hallway multiple times, or by having her roommate (who declined to) testify since the Complainant states her roommate was home during the alleged incident.

During the investigation, the University imposed supportive measures that should have been considered by the Committee when determining sanctions. I was banned from campus, University events, trips, and stripped of all my leadership positions during the five-month long investigation. These measures were, in effect if not intention, punitive. The Committee specifically noted the factors they considered in determining sanctions. They were aware of the measures because I repeatedly pointed them out at the hearing and in the investigation report. They should have, but did not consider, the supportive measures when determining sanctions. The restrictions on my access to education and University programs were detrimental to me. I lost networking and employment opportunities. I was forced to remain off-campus and take classes virtually. The benefits and opportunities afforded to members of the [University] were foreclosed to me. This sanction has caused me to lose access to my federal loans, scholarship funding, and health insurance, making it impossible to afford my psychiatrist and psychologist who are currently assisting me with the mental health issues I am facing as a result of this process and sanction. If this finding is not reversed or this sanction is not significantly reduced, I will also lose the full-time job offer I had secured at one of my dream companies. I have one course left to complete to earn my [Degree]. I was already in the process of completing that last course virtually when receiving notice of being suspended. Please take all of these factors into account.

I hope you will consider the latest guidance from the Office of Civil Rights. The OCR requires that schools consider the impact of separating a student from his or her education by imposing a sanction such as suspension or expulsion when enforcing the school's code of conduct. Remedies for a Complainant when the Respondent was found responsible must be designed to restore or preserve equal access to the school's educational program. The Complainant in this matter is graduating in June and will no longer be at the University.

In summary, I am asking the Appeal Committee to reverse the finding of guilt in regards to the sexual abuse charge based on a breach of my procedural rights. Should this Committee deny that request, I am asking that the Appeal Committee reduce the sanction by removing the suspension because it is disproportionate to the violation based on the aforementioned factors and previous sanctions given to students found guilty of similar offenses. Thank you for your time and consideration.

## APPENDIX C – REQUEST FOR APPEAL ON JANE ROE 2 OUTCOME

[Signed John Doe]