**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL CASE NO. 1:22−cv−05273** |
| | ) | |
| **v.** | ) | **JUDGE MARTHA M. PACOLD** |
| | ) | |
| **THE UNIVERSITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**PLAINTIFF JOHN DOE'S MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

---

**NESENOFF & MILTENBERG, LLP**
**Philip A. Byler, Esq.**
**Andrew T. Miltenberg, Esq.**
**363 Seventh Avenue - Fifth Floor**
**New York, New York 10001**
**212.736.4500**
**pbyler@nmllplaw.com**

**MICHAEL CHERONIS, ESQ.**
**2502 N. Clark St**
**Chicago, Illinois 60614**
**773-255-1430**
**mdc@cheronislaw.com**

*Attorneys for Plaintiff John Doe*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES…………………………………………………………….…....ii

INTRODUCTION……………………………………………………………………………...1

SUMMARY OF THE FACTS…………....……………………………………………...……3

ARGUMENT …………………………………………………………………………....……4

    I.      Plaintiff Will Suffer Irreparable Injury If The
            Requested Relief Is Not Granted……………………………………………………4

    II.     Plaintiff Has A Likelihood Of Success……………………………………...……8

    III.   The Balance of the Equities Tips In Favor Of the Requested Relief………………….13

    IV.   The Requested Preliminary Injunction Is In the Public Interest………………………14

CONCLUSION……………………………………………………………………….…15

i

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*AT&T Co. v. Winback & Conserve Program*, 42 F.3d 1421 (3d Cir. 1994)...........................14

*Coca-Cola Co. v. Alma-Leo U.S.A., Inc.*, 719 F. Supp. 725 (N.D. Ill. 1989).......................…..……6

*Doe v. American University*, 2020 WL 5593909 (D.D.C. Sept. 18, 2020)...........................11

*Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018)...................................................................…..9

*Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016)..................................................................…........12

*Doe v. Middlebury Coll.,* 2015 WL 5488109 (D. Vt. Sept. 16, 2015).................................…..14

*Doe v. Oberlin*, 963 F.3d 580 (6th Cir. 2020)..........................................................................12

*Doe v. Pennsylvania State Univ.,* 276 F. Supp.3d 300 (M.D. Pa. 2017)……..…......................8

*Doe v. Purdue*, 928 F.3d 652 (7th Cir. 2019) ….......................................................................9

*Doe v. Univ. of Arkansas - Fayetteville*, 974 F.3d 858 (8th Cir. 2020)………………....…….12

*Doe v. Univ. of Cincinnati*, 2015 WL 5729328 (S.D. Ohio Sept. 30, 2015).........................7

*Doe v. Univ. of Michigan,* 325 F. Supp.3d 821 (E.D. Mich. 2018)……………………....…….8

*Ganden v. National Collegiate Athletic Association,*
    1996 WL 680000 (N.D. Ill. Nov. 21, 1996)……………………………………………...7-8

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*,
    549 F.3d 1079 (7th Cir. 2008)…………………………………………………………...3

*Halczenko v. Ascension Health, Inc*, 37 F.4th 1321 (7th Cir. 2022)……………………...…….2

*HH-Indianapolis, LLC v. Consol. City of Indianapolis & Cty. of Marion, Indiana,*
    889 F.3d 432 (7th Cir. 2018)…………………………………………………..……...2-3

*Hyatt Corp. v. Hyatt Legal Services,* 736 F.2d 1153 (7th Cir. 1984)]…………………....………6

*Instrumentalist Co. v. Marine Corps League,* 509 F.Supp. 323 (N.D.Ill.1981),
    *aff'd,* 694 F.2d 145 (7th Cir.1982)…………………………………………….………... 6

*King v. DePauw Univ.*, 2014 WL 4197507 (Aug. 22, 2014)………………………..……14, 15

*Lambert v. Buss*, 498 F.3d 446 (7th Cir. 2007)……………………………………...…………2

*Lasco v. Northern*, 733 F.2d 477 (7th Cir. 1984)……………………………….…………..5

*Loc. Lodge No. 1266, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Panoramic Corp.*, 668 F.2d 276 (7th Cir. 1981)…………………………………………7

*Menaker v. Hofstra,* 935 F.3d 20 (2d Cir. 2019)…………………………….…………..12

*Nokes v. Miami Univ.*, 2017 WL 3674910 (S.D. Ohio Aug. 25, 2017)……..…………………8

*Oburn v. Shapp,* 521 F.2d 142 (3d Cir.1975)……………………………….………5
.
*Richmond v. Youngstown State Univ.*, 2017 WL 6502833 (N.D. Ohio Sept. 14, 2017)……..7, 15

*Ringling Brothers-Barnum & Bailey v. Celozzi-Ettelson Chevrolet, Inc.,* 855 F.2d 480 (7th Cir. 1988)…………………………………………6

*Ritter v. Oklahoma*, 2016 WL 2659602 (W.D. Okla. May 6, 2016)……………….………14, 15

*Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380 (7th Cir. 1984)………………….4, 5

*Roth v. Lutheran Gen. Hosp.*, 5 7 F.3d 1446 (7th Cir. 1995)……………………….……1

*Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676 (7th Cir. 2012)………..……3, 6

*T.W. v. Southern Columbia Area School District*, 2020 WL 5751219 (M.D. Pa. Sept. 25, 2020)…………………………………………7

*Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 323 F. Supp.3d 1071 (W.D. Wis. 2018)………...6-7

*Univ. of Texas v. Camenisch,* 451 U.S. 390 (1981)…………………………….……...1

*Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018)………..……….…8

*Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.,* 858 F.3d 1034 (7th Cir. 2017)…………………………………….…3, 8

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)…………………………………2

## Statutes & Rules

Rule 65, Federal Rules of Civil Procedure…………………………………….……1

Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688................................8-13

34 C.F.R. 106.45(b)(5)(i)………………………………………………………….………..10

34 C.F.R. 106.45(b)(5)(v)………………………………………………………..…………10

34 C.F.R. 106.45(b)(6)………………………………………………………….…………..10

**<u>Other</u>**

Gruber, *Anti-Rape Culture*, 64 U. Kansas L. Rev. 1027, 1030 (2016)…………………………13

## INTRODUCTION

Plaintiff John Doe, a Court authorized pseudonym ("Plaintiff"), submits this Memorandum of Law in support of Plaintiff' motion, made pursuant to Rule 65 of the Federal Rules of Civil Procedure, for a preliminary injunction against Defendant The University of Chicago ("Defendant University"), to enjoin Defendant University from (i) continuing Plaintiff's overly long suspension (Plaintiff has already served four quarters of a seven-quarter suspension), (ii) from preventing Plaintiff from taking his final course requirement for eligibility to graduate (which course requirement may be satisfied virtually), (iii) from not allowing Plaintiff to graduate, and (iv) from placing a disciplinary notation on Plaintiff's transcript, and to order such further and other relief as the Court deems just and proper. The evidentiary support for this motion is contained in the accompanying Declarations of Plaintiff with four exhibits.

One purpose of a preliminary injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1453 (7th Cir. 1995). Also, a preliminary injunction should be issued when necessary to preserve the status quo pending the final outcome of a case. *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981).

The reason Plaintiff is bringing this motion for a preliminary injunction is so that he doesn't lose his current job. Plaintiff explains in his Declaration (¶2):

> The main reason for this motion is reflected in the attached documents, Exhibit A-1 and A-2. Exhibit A-1 is the redacted signed contract that I currently have with a salary of $185,000, participation in the company's bonus plan, and eligibility for additional bonuses. My employment was initially intended to commence in August 2022 and although I was able to push my commencement date by one year to August, 2023 (see Exhibit A-2), my contract (Exhibit A-1) will be rescinded if I cannot complete my degree prior to starting. My offer is dependent on completing degree requirements and graduating from the Defendant University. If rescinded, I will have to forgo a once in a lifetime career opportunity with a large monetary guarantee from my employer. As a result of the unjust sanctions, I have already lost out on a year of salary, incentive compensation, experience at a world-class firm, and other career opportunities due to the unfair disciplinary processes to

1

which that I was subject. My reputation has been irreparably harmed as a result both disciplinary processes and losing this contract due to what is already an overly long suspension is not in the best interests of either me or the Defendant University. While I have incurred a large, quantifiable damage as a result of these unjust disciplinary proceedings, I ask that the Court focus on the intangible and hard to quantify damages that I have, continue to, and will further incur if I do not receive this preliminary injunction. The lack of confidentiality in this process, which is cited in my Complaint and further in this declaration, led to emotional pain and suffering that I continue to deal with every day. The reputational damage I incurred from the lack of confidentiality, not only puts my current offer at risk, but hinders my ability to recruit for other roles at comparable institutions. My professional network has been destroyed and my reputation has been tainted so much so, that I believe I may never be able to recoup the promising career outlook I had before these proceedings. I am one course requirement shy for eligibility for graduation. Whatever purpose Defendant University's Title IX people thought (I believe mistakenly) the suspension served, prolonging it any further does not make sense, particularly given the irreparable damage it would cause, such as having my offer rescinded and the fact that I will not have the opportunity to secure a similar role at my current, or comparable institution in the future. My counsel submitted one very sensible, formal settlement proposal to the Defendant's counsel, which was rejected with no counter after three weeks of receiving the proposal. Prior to even filing a formal Complaint to the Court, my counsel searched for alternative resolution by discussing with Defendant University's in-house and external counsel and was never offered an alternative resolution. Seeking and being granted this preliminary injunction is the only pathway to allowing me to retain the career opportunities I have worked so hard for.

"'A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.' *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)." *Halczenko v. Ascension Health, Inc*, 37 F.4th 1321, 1324 (7th Cir. 2022). Plaintiff's motion for a preliminary injunction should be granted because these elements for a preliminary injunction are satisfied.[1]

---

[1] The preliminary injunction test is sometimes said differently in a two-step analysis. "(i) without such relief, [Plaintiff] will suffer irreparable harm before final resolution of its claims; (ii) traditional legal remedies would be inadequate; and (iii) [Plaintiff] has some likelihood of success on the merits." *HH-Indianapolis, LLC v. Consol. City of Indianapolis & Cty. of Marion, Indiana*,

## SUMMARY OF THE FACTS

The evidentiary basis for the requested preliminary injunction is provided in the Declarations of Plaintiff John Doe.  Plaintiff's Declaration has attached four redacted exhibits: (A-1 and A-2) his contract and contract modification to delay start: (B) his appeal in the Jane Doe 1 proceeding; and (C) his appeal in the Jane Doe 2 proceeding.  The contract and contract modification bring focus to the irreparable injury requirement for a preliminary injunction. The appeal documents bring focus to the likelihood of success requirement for a preliminary injunction.

Plaintiff's Declaration details, in summary, the following:

Plaintiff is a now suspended graduate student at Defendant University, having served four quarters of the suspension but just one course short of his graduation and despite a previously unblemished disciplinary record.  Plaintiff was falsely accused by two fellow female students who had been friends. (Pl. Decl. ¶¶ 4-59.)

On November 15, 2020, Plaintiff and Jane Roe 1 had made out at Plaintiff's apartment, but did nothing more; yet, one year after the alleged incident, on November 18, 2021, Jane Roe 1 falsely complained that Plaintiff had forcefully kissed her and had engaged non-consensually in other sexually aggressive behavior.  (Pl. Decl. ¶¶ 4-10, 41-54.)

On October 23, 2021, in the early morning hours, at Jane Roe 2's invitation, Plaintiff went to Jane Doe 2's apartment where Jane Roe 2 told Plaintiff could spend the night; thereafter, the two "spooned" in Jane Roe 2's bed but did not have sex, Plaintiff respecting Jane Roe 2's "no,"

---

889 F.3d 432, 437 (7th Cir. 2018); *see also Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 678 (7th Cir. 2012). If the moving party meets these requirements (and Plaintiff does), then the court balances the nature and degree of the potential harm to each party and the public interest, *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008); *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.,* 858 F.3d 1034, 1044 (7th Cir. 2017) (internal citations omitted).  Here, the relative harm tips in favor of the preliminary injunction requested.

and Jane Roe 2 requested John Doe leave, which he did. On November 5, 2021, Plaintiff received

a formal complaint from Jane Roe 2 (who recently had a bad break off of an engagement) falsely

accusing Plaintiff of exposing himself to her, masturbating in front of her, offering her money for

sex and engaging non-consensually in sexually inappropriate touching; and Plaintiff was removed

immediately from the leadership positions he had held in the graduate program.  (Pl. Decl. ¶¶ 11-

40.)

Plaintiff cooperated in the investigation and was subjected to hearings that, as described

below, did not comply with current Title IX regulations and saw, among other things, Dean

Inabinet vouching for Jane Roe 1's fraudulently created phony journal entries that were not

produced during the investigation but sprung on Plaintiff right before the hearing and Dean

Inabinet's unjustified inclusion of "witness" statements and the hostility of the hearing panel in

the Jane Roe 2 case. Based on what were false accusations without any physical or other genuine

corroborating evidence to meet the "more likely than not" preponderance standard, Plaintiff was

found responsible for sexual misconduct in the Jane Roe 1 case and for sexual harassment and

abuse in Jane Roe 2 case, as a result of a "believe the woman" bias.  Plaintiff was sanctioned to

what was and is an excessive seven-quarter suspension and banishment from campus, graduation

exercises and campus activities.  There were numerous serious errors in the Jane Roe 1 and Jane

Roe 2 proceedings detailed in Plaintiff's appeals. (Pl. Decl. ¶¶ 60-114 & Exs. B-C.)

## ARGUMENT

## I.  Plaintiff Will Suffer Irreparable Injury If The Requested Relief Is Not Granted.

Plaintiff satisfies the critically important prong for a preliminary injunction, as he will

suffer "irreparable injury" – "that is, harm that cannot be prevented or fully rectified by the final

judgment after trial, *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)

4

-- if the requested relief is not granted. To make a showing of irreparable injury, the moving party must establish that he is subject to a continuing harm that cannot be adequately addressed by final relief on the merits and for which money damages are inadequate.

Plaintiff's Declaration explains the consequences of not enjoining Defendant University from continuing Plaintiff's overly long suspension, from preventing Plaintiff from taking his final course requirement for eligibility to graduate and from not allowing Plaintiff to graduate. He has a written contract. (John Doe Decl. ¶2 & Ex. A-1.) He needs to graduate by early 2023 or he will lose his well-paying job, with a $185,000 salary and bonuses, but it is not just the loss of the job – he will suffer reputational damage and lose the opportunity of a lifetime which may never be recovered. It is akin to the loss of business goodwill, cannot be readily quantified and frustrates the purpose of the underlying litigation to repair his reputation and clear away career obstacles from the discriminatory discipline.

While "what constitutes irreparable injury in a case depends upon the particular facts of that case", *Lasco v. Northern*, 733 F.2d 477, 481 (7th Cir. 1984), *quoting Oburn v. Shapp,* 521 F.2d 142, 151 (3d Cir.1975), the facts here make this a classic situation for recognizing irreparable injury.

In *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, a case involving the cancellation of an exclusive dealership, the plaintiff dealer established irreparable injury. In finding irreparable injury, Judge Posner for the Court wrote (749 F.2d at 386):

> The damage award may come too late to save the plaintiff's business. He may go broke while waiting, or may have to shut down his business but without declaring bankruptcy. Of course, even if the plaintiff declares bankruptcy, his trustee in bankruptcy can get a damage award; but probably it will not cover all the losses incident to the bankruptcy.

In *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 679 (7th Cir. 2012), there was a threatened termination of a franchisee if it did not implement the franchisor's pricing policy:

> Stuller would suffer irreparable harm if it was forced to implement Steak N Shake's pricing policy. Specifically, Stuller has presented evidence that the policy would be a significant change to its business model and that it would negatively affect its revenue, possibly even to a considerable extent. . . . In addition, if Stuller implemented Steak N Shake's policy and subsequently prevailed on the merits of its case, it would be difficult to reestablish its previous business model without a loss of goodwill and reputation. Because this is harm that cannot be "fully rectified by the final judgment after trial," it is irreparable.

In *Coca-Cola Co. v. Alma-Leo U.S.A., Inc.*, 719 F. Supp. 725, 729 (N.D. Ill. 1989), a soft drink manufacturer brought suit, alleging various claims for relief stemming from the marketing and selling of a bubble gum product consisting of a white powder sold in a plastic container resembling the manufacturer's bottle. There, the District Court ruled there was irreparable injury for a preliminary injunction:

> [Th]e dilution claim suffices respecting irreparable injury. "[I]t is the very nature of dilution to gnaw away insidiously at the value of a mark." *Hyatt Corp.* [*v. Hyatt Legal Services*]*,* 736 F.2d [1153,] at 1158 [(7ᵗʰ Cir. 1984)]. That injury would be irreparable, not because money damages would fail to make the plaintiff whole, but rather because Coca-Cola cannot be expected to quantify the probable reduction in revenue. "[T]here is no effective way to measure the loss of sales or potential growth-to ascertain the people who don't knock on the door or to identify the specific persons who do not reorder because of the existence of the infringer." *Instrumentalist Co. v. Marine Corps League,* 509 F.Supp. 323, 333 (N.D.Ill.1981), *aff'd,* 694 F.2d 145 (7th Cir.1982). *See also Ringling Brothers-Barnum & Bailey* [*v. Celozzi-Ettelson Chevrolet, Inc.*]*,* 855 F.2d [480,] at 482 [(7ᵗʰ Cir. 1988)] ("there is no effective way to measure the loss of audience or potential growth"). This difficulty in proving damages for the loss of corporate good will adequately demonstrates irreparable injury.

In *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 323 F. Supp.3d 1071, 1075 (W.D. Wis. 2018), a patent infringement suit alleging unlicensed use of telephone captioning technology with echo cancellation, the District Court issued the requested preliminary injunction, stating:

> An irreparable injury is one that cannot be redressed by the available legal remedies, such as an award of money damages. . . .

Plaintiffs here assert essentially two forms of irreparable injury: loss of market share and reputational damage. Both of these have been recognized as irreparable harms because they have long-term effects that cannot readily be quantified, and they would not completely be remedied by the payment of royalties on the infringing products actually sold.

In *Loc. Lodge No. 1266, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Panoramic Corp.*, 668 F.2d 276, 285–286 (7th Cir. 1981), the union sought a preliminary injunction to restrain employer, pending arbitration, from completing a sale of corporate assets without first requiring transferee to assume labor agreement between employer and union.

We believe that Panoramic's sale of the Sintered Specialties Division, were it not for the preliminary injunction issued by the district court, would have resulted in a frustration of the arbitral process and would have threatened irreparable injury to the Union and its members.

An analogy can also be fairly be drawn to lost athletic opportunities. Multiple courts have found that lost athletic opportunities represent irreparable harm. *See, e.g.*, *T.W. v. Southern Columbia Area School District*, 2020 WL 5751219 (M.D. Pa. Sept. 25, 2020) ("Being unable to participate in athletics for a year is a 'temporally isolated opportunity' and is, the Court agrees, precisely the type of injury that preliminary injunctive relief is intended to prevent."); *Richmond v. Youngstown State Univ.*, 2017 WL 6502833 at *1 (N.D. Ohio Sept. 14, 2017) (finding irreparable harm "due, in part, to the public nature of being banned from playing football due to past behavior . . . without notice or process."); *Doe v. Univ. of Cincinnati*, 2015 WL 5729328, at *3 (S.D. Ohio Sept. 30, 2015) (finding that suspension of football player, depriving him of "opportunity to participate in sports on a continuous and uninterrupted basis," constituted irreparable harm); *Ganden v. National Collegiate Athletic Association*, 1996 WL 680000, at *6–7 (N.D. Ill. Nov. 21, 1996) (noting that because collegiate athletes have only limited span of

competitiveness, losing a year of competition would irreparably inhibit their development as athletes).

Federal courts have granted injunctive relief with respect to schools from implementing discipline against students accused of sexual misconduct. *See e.g. Doe v. Univ. of Michigan,* 325 F. Supp.3d 821 (E.D. Mich. 2018) (preliminary injunction granted where student accused of sexual assault established likelihood of success on merits of his claim that university's sexual misconduct policy, which afforded neither a live hearing nor cross-examination, violated his right to due process, and demonstrated irreparable harm because expulsion could drastically curtail future educational and employment opportunities, for which money damages could not compensate student); *Doe v. Pennsylvania State Univ.,* 276 F. Supp.3d 300 (M.D. Pa. 2017) (pre-medical school student demonstrated immediate irreparable harm resulting from state university's immediate suspension and recommendation that student be suspended from highly competitive, accelerated seven-year joint medical school program); *Nokes v. Miami Univ.,* 2017 WL 3674910 (S.D. Ohio Aug. 25, 2017) (preliminary injunction granted prohibiting university from suspending student who alleged school acted in violation of his constitutional due process rights to notice and confrontation of adverse witnesses).

## II. <u>Plaintiff Has A Likelihood Of Success.</u>

Plaintiff satisfies the second prong for a preliminary injunction, as he has a likelihood of success on the merits. "A party moving for preliminary injunctive relief need not demonstrate a likelihood of absolute success on the merits. Instead, [it] must only show that [its] chances to succeed on his claims are '*better than negligible*.'" *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018), *quoting Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.,* 858 F.3d 1034, 1046 (7th Cir. 2017) (emphasis added).

Plaintiff certainly has a better than negligible chance to succeed on the merits on his Title IX claim. As Plaintiff's Memorandum of Law in opposition to Defendant's motion to dismiss establishes, Plaintiff's Complaint states a meritorious Title IX claim; and Plaintiff's declaration in support of his motion for a preliminary injunction provides greater detail as to the facts as well as his appeal documents that show the errors of the Jane Roe1 and Jane Roe 2 proceedings.

Judge Barrett's nationally accepted test for sex discrimination stated in *Doe v. Purdue*, 928 F.3d 652, 667-668 (7th Cir. 2019), is that a plaintiff must allege facts that, "if true, raise a plausible inference that the university discriminated against John [Doe] on the basis of sex." Plaintiff certainly has done that in his Complaint, which factually is supported on this motion by Plaintiff's Declaration and supporting exhibits to his Declaration.

This case initially needs to be considered in connection with what Judge Barrett called the "backdrop" in the 2011 Dear Colleague Letter ("2011 DCL") to a plausible Title IX case alleging other facts showing discrimination, *Doe v. Purdue*, 928 F.3d at 668-669, citing *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018). (ECF 1: Cmplt. ¶¶121-160.) The point (missed by Defendant University) is that the 2011 DCL "explicitly focused on protection of women and effectively equated "victims" and "complainants" in sexual misconduct proceedings as women who must receive preferential treatment," "imposed numerous mandates that inherently made it more difficult for males accused of sexual misconduct to defend themselves," and caused "universities to devise victim centered procedures for adjudicating sexual assault that are not neutral and impartial" with "the reality is that males are almost always the accused respondents and females are almost always the 'victim' complainants"; (ECF 1: Cmplt. ¶¶62, 121-160, 171-173.) Victim centered procedures for adjudicating sexual assault are not neutral and impartial, the reality is that males are almost always the "accused" respondents and females are almost always the "victim"

complainants -- a study by United Educators showed 99% of the accused are male. (ECF 1: Cmplt. ¶ 132.)

Plaintiff's Complaint recognizes that in September 2017, the Department of Education took the first steps toward requiring procedures that would provide basic fairness to both accusing and accused students in Title IX proceedings. The 2011 DCL was revoked by then Education Secretary DeVos based expressly on the need for due process that was lacking and based on a recognition that the 2011 DCL placed "improper pressure upon universities to adopt procedures that do not afford fundamental fairness" and are "overwhelmingly stacked against the accused." DeVos denounced the campus sexual misconduct proceedings as denying due process in a manner that is wholly un-American. Proposed regulations were put through the Administrative Procedure Act notice and comment process, and on May 6, 2020, U.S. Secretary of Education Betsy DeVos announced new Title IX regulations effective on August 14, 2020. (ECF 1: Cmplt. ¶¶161-169.)

"The [Defendant] University of Chicago did not apply the new Title IX regulations effective August 14, 2020, even though Jane Roe 1's and Jane Roe 2's's complaint, the investigation, the hearing and the Hearing Board decision occurred after August 14, 2020." (ECF 1: Cmplt. ¶ 175.) Rather, Defendant failed four requirements of the current Title IX regulations. *One*, contrary to 34 C.F.R. 106.45(b)(5)(i), the burden of proof was shifted on to Plaintiff, as Defendant adhered to victim-centered "believe the woman" procedures not in accord with the 2020 Title IX regulations. *Two*, the handling of Jane Roe 1's purported diary entries did not give access to Plaintiff as required by 34 C.F.R. 106.45(b)(5)(v). *Three*, contrary to 34 C.F.R. 106.45(b)(6), cross-examination was not afforded to Plaintiff's advisor. *Four*, contrary to 34 C.F.R. 106.45(b)(6), a transcript or audio recording was not made of the hearings. (ECF 1: Cmplt. ¶¶ 62, 78-81, 84-92, 175-177.) The failure to comply with the 2020 regulations supports a finding of

Title IX discrimination, *Doe v. American University*, 2020 WL 5593909 at *9 (D.D.C. Sept. 18, 2020).

Plaintiff's case of sex discrimination focuses on the gender biased process favoring female complainants -- the procedural defects (ECF 1: Cmplt. ¶¶175-177); the gender biased process favoring female complainants -- the irregular adjudicative process (ECF 1: Cmplt. ¶¶178-180); and the excessive sanction (ECF 1: Cmplt. ¶¶181-182).

Plaintiff's Complaint focuses on and Plaintiff's Declaration supports two particular procedural defects contributing to a gender-biased process consistent with *Doe v. Purdue*. *First*, "[s]tarting with the investigation, the burden of proof was shifted on to [Plaintiff] John Doe and the questions asked during the investigation and hearing were geared to finding [Plaintiff] John Doe responsible as was presumed to be the case. The complaints of Jane Roe 1 and Jane Roe 2 were presumed to be 100% true and lacked supporting evidence that absent the presumption of guilt placed upon John Doe, would have been insufficient to find [Plaintiff] John Doe responsible for sexual misconduct." (ECF 1: Cmplt. ¶ 176.) *Second*, "[t]he investigation in Jane Roe 1's case was biased in allowing Jane Roe 1 to submit, late, purported journal entries that provided the basis for decision; without the purported journal entries, the hearing panel would have been compelled to find [Plaintiff] John Doe not responsible for sexual misconduct. The investigations in both Jane Roe 1's case and Jane Roe 2's case gave Jane Roe 1 and Jane Roe 2 significantly more time to substantiate their cases with witness testimony and documents than given to [Plaintiff] John Doe." (ECF 1: Cmplt. ¶177.) These allegations were further supported by specifics in the narrative body of the Complaint. (ECF 1: Cmplt. ¶¶ 69-70, 76-81, 84-92.) There is nothing conclusory about the foregoing allegations, and Defendant's rhetorical denial of anti-male bias does not rebut the plausibility that the university complaints of Jane Roes 1 and 2 were presumed to be true and the

promotion by Defendant's Dean Inabinet of Jane Roe 1's supposed diary entries not provided during the investigation because Plaintiff is a man and Jane Roes 1 and 2 are women.  (Pl. Decl. ¶¶77-114.)

The Complaint pleads sex discrimination was also manifested in the irregular adjudicative process for which anti-male bias is a plausible explanation, relying on *Menaker v. Hofstra,* 935 F.3d 20, 34 (2d Cir. 2019), *Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016), *Doe v. Univ. of Arkansas - Fayetteville*, 974 F.3d 858, 864-865 (8th Cir. 2020) *Doe v. Oberlin*, 963 F.3d 580 (6th Cir. 2020).

Plaintiff's Complaint alleges and Plaintiff's Declaration shows that the evidence was clearly insufficient for finding Plaintiff responsible for the charges based on Jane Roe 1's complaint, that the finding of responsibility rested upon Dean Inabinet's unjustified vouching for supposed journal entries of Jane Roe 1 that Jane Roe 1 submitted days before the hearing and not during the investigation.  Jane Roe 1 provided no real evidence during the course of a five-month long investigation; her witnesses provided testimony that actually validated Plaintiff's claim of innocence; Jane Roe 1's witness statements did not corroborate any of the claims she made; had the Committee hearing panel truly adhered to the "preponderance of the evidence" standard, the Committee hearing panel would have found Plaintiff not responsible. The evidence was also clearly insufficient for finding Plaintiff responsible for the charges based on Jane Roe 2's complaint, that the finding of responsibility rested upon Dean Inabinet's unjustified inclusion of "witness" statements that did not witness the alleged incident (while Jane Roe 2's roommate did not provide a statement) and the hostility of the hearing panel.  Plaintiff's Declaration Exhibits B and C are Plaintiff's appeals that details errors in those proceedings.  (ECF 1: Cmplt. ¶ 179; Pl. Decl. ¶¶74-114 & Exs. B-C.)

The anti-male gender biased nature of the sexual misconduct disciplinary proceedings against Plaintiff was reflected in a disproportionate sanction of a seven-quarters suspension. Plaintiff had no other disciplinary record; there was no use of force; the alleged misconduct occurred as two single, isolated incidents; no one other than Jane Roes 1 and 2 were affected and they are no longer at Defendant University; there was no detriment to the health, safety and wellbeing of other members of the Defendant University. (ECF 1: Cmplt. ¶¶ 181-182; Pl. Decl. ¶¶1, 94, 014, 113, 116.) The sanction reflects a gender biased belief that males need to be sanctioned severely for sexual misconduct. Gruber, *Anti-Rape Culture*, 64 U. Kansas L. Rev. 1027, 1030 (2016).

### III. The Balance of the Equities Tips In Favor Of the Requested Relief.

Plaintiff satisfies a third prong for a preliminary injunction, as the balance of equities tips in favor of the requested relief. If injunctive relief is not granted, the harm to Plaintiff in terms of career and business opportunities, lost income and reputational loss greatly outweighs whatever harm to the Defendant University can possibly cite, particularly given the facts that Plaintiff has already served four quarters of a suspension for offenses that typically do not result in that long a suspension, that Plaintiff can satisfy the one course remaining requirement remotely, and that the Jane Roes 1 and 2 have moved on and are no longer at the school. (Pl. Decl. ¶¶ 1-2, 95-114.)

Exhibit A-1 to Plaintiff's Declaration is the redacted signed contract that Plaintiff currently has with a salary of $185,000, participation in the company's bonus plan, and eligibility for additional bonuses. His employment was initially intended to commence in August 2022 and although I was able to push my commencement date by one year to August, 2023 (see Exhibit A-2), his contract (Exhibit A-1) will be rescinded if he cannot complete his degree prior to starting.

13

Plaintiff's employment offer is dependent on completing degree requirements and graduating from the Defendant University.   (Pl. Decl. ¶¶ 1-2 & Exs. A-1, A-2.)

In such circumstances, the case law favors the student: *Doe v. Middlebury Coll.,* 2015 WL 5488109, at *4 (D. Vt. Sept. 16, 2015) (finding balance weighs in favor of student because "[t]he harm Middlebury will suffer if Plaintiff is allowed to remain a student for the fall semester is not as great as the harm Plaintiff will suffer if he is not permitted to return to campus but ultimately prevails in the case"); *King v. DePauw Univ.*, 2014 WL 4197507, at *14 (Aug. 22, 2014) (finding balance of equities "firmly" in student's favor: "the real, unavoidable consequences" he would suffer absent an injunction, even if he ultimately won the case, outweighed any harm to university); *Ritter v. Oklahoma*, 2016 WL 2659602, at *5 (W.D. Okla. May 6, 2016) (noting balance favors granting injunction because any harm to college is "inconsiderable" compared to harm to student if he was wrongfully expelled).

## IV.  The Requested Preliminary Injunction Is In the Public Interest.

Plaintiff satisfies a fourth prong for a preliminary injunction, as the injunction is in the public interest. When, as here, a plaintiff has already demonstrated likely success on the merits and irreparable harm, "it almost always will be the case that the public interest will favor the plaintiff." *AT&T Co. v. Winback & Conserve Program*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). There is no public interest served in the continuation of an overly long suspension that substantially harms a young man's otherwise promising career.

Furthermore, the general public interest in fair play would be served by the preliminary injunction given the irreparable harm to Plaintiff if the requested relief is not granted and the merits of Plaintiff's Title IX case, including Defendant University's violation of current Title IX regulations, the irregular adjudicative process, and the disproportionate sanction imposed on

14

Plaintiff. *Richmond v. Youngstown State Univ.*, 2017 WL 6502833 at \*1 (N.D. Ohio Sept. 14, 2017) ("[T]he public has great interest in its public institutions meeting reasonable expectations"); *King v. DePauw Univ*, 2014 WL 4197507, at \*14 (noting public interest in applying policies fairly in disciplinary matters); *see also Ritter v. State of Oklahoma*, 2016 WL 2659620, at \*3 ("it is always in the public's interest that a student be treated fairly before being disciplined").

## CONCLUSION

For the reasons stated above, the Court should enjoin Defendant University from (i) continuing Plaintiff's overly long suspension (Plaintiff having already served four quarters of a seven-quarter suspension), (ii) from preventing Plaintiff from taking his final course requirement for eligibility to graduate (which course requirement may be satisfied virtually), (iii) from not allowing Plaintiff to graduate, and (iv) from placing a disciplinary notation on Plaintiff's transcript, and to order such further and other relief as the Court deems just and proper.

**Dated: New York, New York**
**February 8, 2023**

                              **Respectfully submitted,**
                              **NESENOFF & MILTENBERG, LLP**
                              **By:** /s/ *Philip A. Byler*
                              **Philip A. Byler, Esq.**
                              **Andrew T.Miltenberg,Esq.(pro hac vice forthcoming)**
                              **363 Seventh Avenue, Fifth Floor**
                              **New York, New York 10001**
                              **212-736-4500**
                              **pbyler@nmllplaw.com**
                              **amiltenberg@nmllplaw.com**

                              **MICHAEL CHERONIS, ESQ.**
                              **2502 N. Clark St**
                              **Chicago, Illinois 60614**
                              **773-255-1430**

                              *Attorneys for Plaintiff John Doe*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 8, 2023, the foregoing Memorandum of Law was electronically served by e-mail upon:

Scott Warner, Esq.
Husch Blackwell LLP
312-526-1633
Scott.Warner@huschblackwell.com
*Attorneys for The University of Chicago*

_____*Philip A. Byler*_____
Philip A. Byler

16