IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-5273 |
| -vs- | ) | |
| | ) | Chicago, Illinois |
| UNIVERSITY OF CHICAGO, | ) | March 22, 2023 |
| | ) | 2:30 p.m. |
| Defendant. | ) | |

TRANSCRIPT OF TELEPHONIC PROCEEDINGS
BEFORE THE HONORABLE MARTHA M. PACOLD

TELEPHONIC APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | MR. PHILIP A. BYLER<br>Nesenoff & Miltenberg, LLP<br>363 Seventh Ave, 5th Floor<br>New York, NY 10001<br>(212) 736-4500<br>Email: Pbyler@nmllplaw.com |
| For the Defendant: | MR. SCOTT L. WARNER<br>MS. MARY ELIZABETH DEWEESE<br>Husch Blackwell LLP<br>120 South Riverside Plaza, Suite 2200<br>Chicago, IL 60606<br>(312)526-1633<br>Email: Scott.warner@huschblackwell.com<br>Mary.Deweese@huschblackwell.com |
| Also Present: | MR. LEIGH BONSALL<br>University of Chicago<br>Assistant General Counsel |

Court Reporter:

KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
Official Court Reporter
United States District Court
219 South Dearborn Street, Suite 1426
Chicago, Illinois 60604
Telephone: (312) 435-5569
Kathleen_Fennell@ilnd.uscourts.gov

* * * * * * * * * * * * * * * * * *

PROCEEDINGS REPORTED BY CERTIFIED STENOGRAPHER
TRANSCRIPT PRODUCED WITH A COMPUTER

(Proceedings heard telephonically:)

THE CLERK: The United States District Court for the Northern District of Illinois is now in session, the Honorable Martha M. Pacold presiding.

22 C 5273, Doe versus University of Chicago. If you can state your name for the record, we'll start with plaintiff's counsel.

MR. BYLER: Yes, Philip A. Byler, counsel for plaintiff.

MR. WARNER: And Scott Warner, here, counsel for the University of Chicago. Also with me are Leigh Bonsall from the University, and Mary Deweese also of Husch Blackwell.

THE COURT: Okay. Good afternoon, everyone. We're here for a ruling on the motion for preliminary injunction, and I am prepared also to rule on the motion to dismiss.

Does anyone have any comments before I turn to the rulings?

Okay. I'm hearing nothing, so I am going to proceed to the rulings.

Let me just explain the format. I will be ruling from the bench today on both of those motions. And so I'll be giving both the rulings and the reasoning here on the record, and so that means that it will -- the hearing will take a little bit of time today so that I can walk through the reasoning, and so I appreciate your bearing with me.

And then I also will not be issuing a separate written decision. I'll be ruling from the bench. I will explain all my reasons on the record, but I don't intend to issue a separate written order. I'll follow up with a minute entry that just gives the bottom line on both motions, but I am not going to do a separate written order.

And the reason for that is just speed. I can get you a ruling faster in this format than if I were to take the additional time to do a written order. And as you know, there is some time sensitivity to the motion for preliminary injunction. So that is just an explanation of the format.

So with that, I will turn to actual rulings, and there are two motions currently pending. One is a motion by the defendant, University of Chicago, to dismiss the complaint. The motion to dismiss is docket 13. And the second is a motion by plaintiff, John Doe, for preliminary injunction. That motion is docket 25.

I will give you just the bottom line of both motions up front, and then I'll walk through the reasoning.

And so for the reasons that I will explain, I'm going to deny the motion for preliminary injunction without prejudice.

And on the motion to dismiss, I am going to grant that motion in part and deny the motion to dismiss in part. The motion to dismiss is denied without prejudice as to

plaintiff's -- or I'm sorry, it's denied as to plaintiff's Title IX claim, but it is granted without prejudice as to plaintiff's claims for breach of contract and promissory estoppel, as well as plaintiff's claim for emotional and psychological damages under Title IX.

To the extent that the motion to dismiss is granted, those claims are dismissed without prejudice and with leave to amend the complaint by April 12, 2023.

Okay. So turning to the reasoning, I assume the parties are familiar with the factual and procedural history of this litigation, so I'll provide only a brief summary of the relevant procedural background.

On September 27, 2022, plaintiff filed a complaint asserting claims for (1) sex discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. Section 1681, and following; (2) breach of contract; and (3) promissory estoppel.

On December 19, 2022, the University filed a motion to dismiss the complaint for failure to state a claim.

On February 8, 2023, plaintiff filed a motion for preliminary injunction, seeking to enjoin the University from:

(1) continuing plaintiff's seven-quarter suspension;

(2) preventing plaintiff from taking his final course requirement for eligibility to graduate;

(3) preventing plaintiff from graduating; and

(4) placing a disciplinary notation on plaintiff's transcript.

I adopted the parties' proposed briefing schedule and granted plaintiff an extension for his reply brief. Briefing concluded on March 13, 2023.

Plaintiff requested that a ruling on the preliminary injunction be made by the start of the University's spring quarter on March 20, 2023, so that plaintiff could enroll in a class and complete his degree during that period.

However, the parties indicated during the March 17th preliminary injunction hearing that plaintiff might be able to enroll in a class after the first day of the quarter.

The University filed a statement after the hearing, which clarified that the enrollment period for the spring quarter will close on March 27, 2023 at 8:00 a.m.

That's a brief background. Let me now turn to the motion for preliminary injunction.

I would like to start with the legal standard governing motions for preliminary injunctions.

A preliminary injunction is "an exercise of a very far-reaching power, never to be indulged except in a case clearly demanding it." *Lukaszcyk v. Cook County*, 47 F.4th 587, 598 (7th Cir. 2022).

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he

is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* (quoting *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008)).

"Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted." *Courthouse News Service v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

The legal standard that courts are required to apply at the preliminary injunction stage is important here, and it comes from binding Seventh Circuit precedent. Under that precedent, when assessing a motion for preliminary injunction, the court "does not accept plaintiff's allegations as true, nor does the court give plaintiff the benefit of all reasonable inferences in plaintiff's favor, nor does the Court give plaintiff the benefit of conflicting evidence as the court would in reviewing a grant of summary judgment." *Doe v. University of Southern Indiana*, 43 F.4th 784, 791 (7th Cir. 2022).

Walking through the preliminary injunction factors, the first issue is whether plaintiff is likely to suffer irreparable harm in the absence of preliminary relief.

Irreparable harm is "harm that cannot be repaired and for which money compensation is inadequate." *Orr v. Shicker*,

953 F.3d 490, 502 (7th Cir. 2020).

"The moving party must demonstrate that he will likely suffer irreparable harm absent obtaining preliminary injunctive relief." *Id.*

This requires "more than a mere possibility of harm." *Id.*

As the Supreme Court has explained, "issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

The first harm plaintiff says will occur in the absence of a preliminary injunction is the loss of a job opportunity, and plaintiff refers to this as the loss of an opportunity of a lifetime.

Plaintiff argues that continuing his suspension for three more quarters will cause him to lose a job opportunity that includes a $185,000 salary and bonuses.

The parties dispute (and the record is not clear) whether plaintiff's job opportunity requires a graduate degree, whether he could extend (or delay) the start date, and whether the job requires that he receive his graduate degree by a specific date.

But it is not necessary to resolve these factual

disputes because Seventh Circuit caselaw forecloses plaintiff's claim.

The Seventh Circuit has held that "inability to find another job ... is not irreparable harm." *Bedrossian v. Northwestern Memorial Hospital*, 409 F.3d 840, 846 (7th Cir. 2005).

Additionally, plaintiff's claim of future job loss is too speculative to warrant preliminary relief, and monetary damages can remedy his alleged harm. *See Saud v. DePaul University*, 2019 WL 5577239, at *9 (N.D. Ill., Oct. 29, 2019).

02:40:16

For example, monetary damages could be calculated by considering lost wages, job-related benefits and bonuses.

Plaintiff analogizes his potential job loss with cases involving the loss of business good will and loss of athletic opportunities, but those cases are distinct from the facts here.

02:40:42

Simply put, plaintiff has not met his burden of demonstrating that this job loss or any future job loss constitutes irreparable harm.

02:40:57

And that is not at all to diminish the severity of the harms that plaintiff is pointing to, but they are not the sort of harms that constitute irreparable harm within the meaning of Seventh Circuit precedent.

Plaintiff also argues that in the absence of a preliminary injunction, he will suffer irreparable harm in the

02:41:21

form of reputational damage.

According to plaintiff, if his seven-quarter suspension is not enjoined, he will suffer reputational damage that will jeopardize his current job offer, as well as any future employment opportunities.

This argument is unpersuasive for several reasons.

First, plaintiff has already served more than half of his suspension, so he has already sustained the reputational damage he alleges. Plaintiff's claim for reputational harm may have been stronger if, for example, he sought to enjoin the suspension before it began. Plaintiff does not explain how any irreparable harm is unique to the remainder of the suspension or how enjoining the suspension now would remedy the reputational damage.

Second, without more support, plaintiff's claim of future job loss based on reputational harm is too speculative to warrant preliminary relief. Plaintiff does not provide support as to how continuing the suspension for three additional quarters would impose additional harm to his reputation on the job market.

The claim of reputational harm might have been persuasive had it been made at the outset of the suspension or at least close to the beginning of the suspension. That is because reputational harm is difficult to quantify in monetary terms. See 11A Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure, Civil Section 2948.1, (3d edition 2022), which says, "Injury to reputation or good will is not easily measurable in monetary terms, and so often is viewed as irreparable."

But since plaintiff has already incurred this reputational harm for more than a year, it is unclear how a preliminary injunction can prevent the harm at this point.

And, finally, plaintiff's delay in seeking a preliminary injunction undermines the claim of irreparable harm, at least in part. *Saud*, 2019 WL 5577239, at *9 (citing cases).

"A lengthy, unexplained delay in seeking relief calls into question how urgent the need for preliminary equitable relief really is." *Redbox Automated Retail v. Xpress*, 310 F.Supp 3d 949, 953 (N.D. Ill. 2018) (quoting *Michigan v. United States Army Corps of Engineers*, 667 F.3d 765, 788 (7th Cir. 2011).

Plaintiff explains the delay by stating that since his initial suspension on March 29, 2022 (and the suspension increase on April 18, 2022), he has requested an investigation, filed a complaint, and made at least two settlement offers.

This is understandable and this context helps explain the steps plaintiff has taken over the last year to resolve the dispute, but it does not explain why plaintiff waited

almost a year to seek an injunction.

Ultimately, I don't find this particular point about the delay that -- I don't give it much weight in this decision because I do credit the explanation that plaintiff gave. So I don't view this as a dispositive factor, but it does exist, and so it just slightly weighs against the claim of irreparable harm.

And for all the reasons I've explained, plaintiff has not established that there's a likelihood of irreparable harm in the absence of the preliminary relief.

This alone is sufficient grounds upon which to deny the motion for preliminary injunction, but for completeness, I will briefly discuss the other preliminary injunction factors.

So turning to the likelihood of success on the merits, and here the claim is a Title IX sex discrimination claim. So the question is what is the likelihood of success on the merits of that claim.

This "step in the analysis requires a plaintiff to demonstrate that the claim has some likelihood of success on the merits, not merely a better than negligible chance." *University of Southern Indiana*, 43 F.4th at 791 (quoting *Mays v. Dart*, 974 F.3d 820, 822 (7th Cir. 2020).

But as the Seventh Circuit has "emphasize[d]," federal district courts do not provide a third "forum -- after the University committee's hearing and the administrative

appeal -- to decide what actually happened" between the parties to the administrative proceeding. *Id.* at 792. Meaning what actually happened between plaintiff and Jane Roes 1 and 2.

Under Title IX, "No person in the United States shall, on the basis of sex, be excluded from participation in, denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. Section 1681(a).

"A Title IX sex discrimination claim requires proof that '(1) received federal funding, (2) plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution in question discriminated against plaintiff based on gender.'" *University of Southern Indiana*, 43 F.4th at 792, (quoting *Doe v. Columbia College Chicago*, 933 F.3d 849, 854 (7th Cir. 2019)).

The third element is the only element in dispute here.

The relevant question to consider is whether plaintiff is likely able to show sex discrimination based on the University's grievance process.

Plaintiff first argues that the University erroneously applied its policy on harassment discrimination and sexual misconduct instead of its policy on Title IX sexual harassment.

At this stage, this argument is unpersuasive.

The University applied its code of conduct, which it is entitled to do when "the conduct alleged in the formal complaint ... did not occur in the [University's] education program or activity." 34 C.F.R. Section 106.45(b)(3)(i), U.S. Department of Education, Summary of Major Provisions of the Department of Education's Title IX Final Rule 2; *see also Davis v. Monroe County Board of Education*, 526 U.S. 629, 644-46 (1999).

It is undisputed that the complaints against plaintiff arose from events that took place off campus, so at this stage plaintiff has not met his burden of showing that the University incorrectly applied its policy on harassment, discrimination and sexual misconduct, rather than its policy on Title IX sexual harassment.

Accordingly, I must determine whether plaintiff is likely able to show sex discrimination based on the grievance process that was afforded to plaintiff under the University's policy on harassment discrimination and sexual misconduct.

As the Seventh Circuit explained in *Doe v. University of Southern Indiana*, "a plaintiff cannot prove gender discrimination by merely identifying mistakes or imperfections in the process." 43 F.4th at 793.

In other words, "procedural irregularities may support a finding of sex bias under Title IX if, in light of

all the circumstances, a fact-finder is convinced that the defendant deviated from proper procedures, not because of human error but by design, to achieve covertly what it could not do openly: discriminate against the plaintiff on the basis of his sex." *Id.*

"'[A]s the number of irregularities increases, or the irregularities become more serious,' it begins to look less likely that the errors were due to benign reasons." *Id.* (quotation omitted).

I first consider the alleged procedural flaws that occurred during the University's grievance process.

According to plaintiff, the University's grievance process involved the following flaws:

(1) the burden of proof was shifted onto the plaintiff because the University adhered to victim-centered procedures that were not in accord with the 2020 Title IX regulations;

(2) plaintiff was not informed of Jane Roe 1's diary entries until three days before his case hearing;

(3) plaintiff's advisor was not afforded the opportunity to conduct cross-examination;

(4) no transcript or audio recording was made of the hearing; and

(5) the seven-quarter suspension imposed on plaintiff was disproportionate and not based on any relevant policy or

guidance.

The University explains each of these alleged procedure flaws as follows:

Regarding the burden of proof, the University explains that the process proceeded with the presumption that plaintiff was not responsible and that its notices of allegations reflected this presumption.

Furthermore, the committees provided ample evidence when reporting their findings, which demonstrates, according to the University, that the University met its burden when holding plaintiff responsible.

With respect to Jane Roe 1's diary entries, the University states that both plaintiff and Jane Roe 1 were given the opportunity to supply additional evidence at the same point before the hearing.

The University also points to plaintiff's statement at the time that he did not need "to validate the new additional information compiled" as evidence that plaintiff affirmed he was comfortable with the proceedings.

Regarding the sanction imposed on plaintiff, the University provides support demonstrating that plaintiff's sanction was not disproportionate compared to similar conduct among graduate and undergraduate students. The University also states that when recommending sanctions, the two committees came to unanimous decisions that plaintiff violated

02:52:52 multiple policy provisions based on ample evidence.

Regarding plaintiff's ability to cross-examine witnesses and the lack of a transcript or audio of the hearing, plaintiff has not met his burden of demonstrating that these procedures were irregularities under the University's non-Title IX policy or, at this preliminary injunction stage, how these procedures resulted in sex discrimination.

02:53:09 At this stage, plaintiff has not demonstrated that these alleged procedural flaws were evidence of gender bias rather than mistakes or imperfections in the process.

Some of the alleged procedural flaws are troubling as a matter of due process, such as the absence of cross-examination and a transcript or audio recording of the hearing. 02:53:32 Given the lack of a transcript or audio recording of the hearing, many of the parties' arguments about what actually occurred at the hearing are matters of conflicting declarations, and so the absence of a transcript, you know, is what leads to that -- that situation, where you have 02:54:02 conflicting declarations about what even occurred in the hearing.

And so those sorts of procedural flaws are concerning. However, there is no due process claim in this case. Rather, there's a Title IX claim, and this is a 02:54:25 preliminary injunction ruling. It's by definition

preliminary, and the parties are free to make whatever arguments they would like to make at a later stage on these and any other issues.

Next, I considered plaintiff's allegation that the statement of the University representative reflected bias on the basis of sex.

Here plaintiff argues that Dean Jeremy Inabinet, the Associate Dean of Students for Disciplinary Affairs (and the investigator in the case), demonstrated bias by incorporating false witness statements to improve the credibility of one of his accusers. Plaintiff further argues that Dean Inabinet's bias is demonstrated on the dean's website, which states that his expertise includes "the intersection of policy and procedure as it relates to issues of violence against women."

This allegation and statement are not sufficient to demonstrate a likelihood of success on the merits for purposes of the preliminary injunction because Dean Inabinet was not involved in deciding whether plaintiff violated the policy or what sanctions should be imposed.

Again, the ruling on the preliminary injunction is without prejudice to arguments any party may wish to make at a later stage.

Plaintiff's last argument is that the backdrop of the 2011 Dear Colleague Letter, when combined with the alleged procedural flaws and other evidence of alleged gender bias,

shows sex discrimination under Title IX.

When reviewing a motion to dismiss in *Doe v. Purdue University*, the Seventh Circuit explained that courts may consider the Department of Education's 2011 Dear Colleague Letter as a backdrop used to explain the pressure imposed on the University by the Department and the public. 928 F.3d 652, 668-69 (7th Cir. 2019). But the Court further clarified that "standing alone," the letter "is obviously not enough to get plaintiff over the plausibility line." *Id.*

As I just explained, plaintiff has not met the burden of showing that the Title IX claim is sufficiently likely to succeed on the merits for purposes of a preliminary injunction.

Even when plaintiff's claims of procedural flaws and bias exhibited by the dean are considered against the backdrop of the 2011 Dear Colleague Letter, plaintiff still has not met his burden for the preliminary injunction.

Finally, plaintiff has not made arguments regarding the likelihood of success on the merits for his breach of contract or promissory estoppel claims. He therefore has not met his burden of showing that a preliminary injunction is warranted on his claims. *Courthouse News Service*, 908 F.3d at 1068.

Thus, at the preliminary injunction stage, plaintiff has not established a sufficient likelihood of success on the

merits of any of his claims.

Because plaintiff has not met his burden for these two preliminary injunction factors, I need not address the other factors, the balance of equities or the public interest in an injunction.

02:57:36

However, I would note that these factors cut in favor of both parties.

For example, on the balance of equities, plaintiff has a strong interest in the results of a fair process and a just result. The potential of an excessive suspension and any related employment ramifications weigh in plaintiff's favor. But similarly, the University has a strong interest in providing safety on campus and enforcing its disciplinary process. The balance of equities therefore cuts in favor of both parties.

02:57:47

02:58:10

Similarly, the fairness of disciplinary processes at academic institutions is in the public interest, but this factor again cuts in favor of both plaintiff and the University.

For all these reasons, plaintiff's motion for a preliminary injunction is denied without prejudice.

02:58:23

Now turning to the University's motion to dismiss. Once again, I begin with the applicable legal standard. And importantly, the legal standard governing motions to dismiss differs from the legal standard governing motions for

02:58:40

preliminary injunction.

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is required to accept as true all factual allegations in the complaint and to draw all permissible inferences in plaintiff's favor. *Boucher v. Finance System of Green Bay*, 880 F.3d 362, 365 (7th Cir. 2018).

The court also considers factual allegations in plaintiff's response to the motion so long as those facts are consistent with the pleadings. *Geinosky v. City of Chicago,* 675 F.3d 743, 745, n. 1 (7th Cir. 2012).

To survive a motion to dismiss, a plaintiff must allege enough facts to state a claim to relief that is plausible on its face.

Federal pleading standards do not require detailed factual allegations, but they demand more than an unadorned, "the-defendant-unlawfully-harmed-me accusation," and that is the familiar standard from *Iqbal*.

Nevertheless, the complaint need not anticipate defenses and attempt to defeat them.

The court may also consider facts of which the court can take judicial notice, such as matters that are part of the public record.

"It is the defendant's burden to establish the complaint's insufficiency." *Gunn v. Continental Casualty*

*Company*, 968 F.3d 802, 806 (7th Cir. 2020).

Starting with Title IX, the Title IX claim, as I mentioned before, and this is from the *Southern Indiana* case, a "Title IX sex discrimination claim requires proof that (1) the educational institution received federal funding, (2) plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution in question discriminated against plaintiff based on gender. And that's from *University of Southern Indiana*, 43 F.4th at 792 (quoting *Columbia College Chicago*, 933 F.3d at 854).

Again, the third element is the only element in dispute here.

I will not reiterate plaintiff's Title IX claim or the University's responses to plaintiff's allegations. Instead, the parties are referred to the summary that I provided when discussing the preliminary injunction.

Although plaintiff did not establish a sufficient likelihood of success at the preliminary injunction stage, he has alleged enough facts to state a claim to relief that is plausible on its face.

Taken together, plaintiff's allegations raise a plausible inference that he was denied an educational benefit on the basis of sex.

In making its determination I am following the

Seventh Circuit's precedent in *Doe v. Purdue University*, 928 F.3d 652 (7th Cir. 2019).

In that case, the court reversed a district court's grant of defendant's motion to dismiss for failure to state a claim, concluding in part that when considering the 2011 Dear Colleague Letter as a backdrop and construing all inferences in plaintiff's favor, it was plausible that advisors disbelieved the defendant because he was male. *Id.* at 668 to 70.

Similarly here, it is plausible that based on the procedural flaws or irregularities, the University denied the plaintiff an educational benefit on the basis of his sex. *See also Doe v. Miami University*, 882 F.3d 579, 597 (6th Cir. 2018); *Doe v. Baum*, 903 F.3d 575, 585-88 (6th Cir. 2018); *Doe v. Columbia University*, 831 F.3d 46, 59 (2d Cir. 2016).

Specifically, plaintiff's allegations that he did not have an opportunity to cross-examine witnesses, that the University did not create a transcript or audio of the hearing, and that plaintiff did not have adequate time to review evidence plausibly alleged sex discrimination. *See also Baum*, 903 F.3d at 578 (stating in regard to a due process clause claim that "if a public university has to choose between competing narratives to resolve a case, the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the

presence of a neutral fact-finder"); *Flaim v. Medical College of Ohio*, 418 F.3d 629, 636 (6th Cir. 2005) (stating in regard to a due process clause claim that "it is always wise to produce some sort of record of the proceedings, whether it be a transcript or a recording, though a record may not always be constitutionally required").

I reach this conclusion, notwithstanding the fact that (as in *Purdue University)* plaintiff here may face problems of proof, and the fact-finder might not buy the inferences that he's selling. But his claims should make it past the pleading stage. *Purdue University*, 928 F.3d at 670.

Because plaintiff's complaint adequately states a claim under this legal standard, the University's motion to dismiss is denied on the Title IX claim.

However, the University's motion to dismiss plaintiff's claim for emotional and psychological damages under Title IX is granted pursuant to *Cummings v. Premier Rehab Keller*, 142 S. Ct. 1562, 1569-76 (2022) (holding that emotional distress damages are not available under antidiscrimination statutes enacted under the Spending Clause of the Constitution, including Title IX).

Turning to the other claims in the complaint, breach of contract and promissory estoppel, the University also moves to dismiss these claims for breach of contract and promissory estoppel.

On the breach of contract claim, the University argues that the complaint does not attach any alleged contract or otherwise identify any contractual promise the University failed to honor or how any such promise was breached. The University further argues that the complaint fails to allege that the University acted arbitrarily or capriciously, as required under state law.

On the promissory estoppel claim, the University argues that the complaint failed to allege an unambiguous promise or detrimental reliance.

In response, plaintiff states that his "state law breach of contract and promissory estoppel claims can and should be amended."

According to plaintiff, the "specificity of University policies can be provided for breach of contract, and the arbitrariness of University decision-making in connection with promissory estoppel can be alleged." And that's docket 24 at page 24.

Based on plaintiff's response, I am granting the motion to dismiss with respect to the claims for breach of contract and promissory estoppel. *See Community Bank of Trenton v. Schnuck Markets*, 887 F.3d 803, 825-26 (7th Cir. 2018). Those claims are dismissed without prejudice and with leave to amend the complaint by April 12, 2023.

So to conclude and summarize, plaintiff's motion for

preliminary injunction, docket 25, is denied without prejudice, and the University's motion to dismiss, docket 13, is granted in part and denied in part. The motion to dismiss is denied as to plaintiff's Title IX claim. The motion to dismiss is granted as to plaintiff's claims for breach of contract and promissory estoppel, as well as his claim for emotional and psychological damages under Title IX. Those claims are dismissed without prejudice and with leave to amend the complaint by April 12, 2023.

I want to remind the parties as I mentioned before that the preliminary injunction ruling is by definition preliminary, and therefore it does not foreclose any arguments the parties may wish to make at a later stage with the benefit of more time to develop the arguments and the factual record.

Also, although I have denied the preliminary injunction, having reviewed the motion, the motion does explain why it would be good to resolve this case on the merits as promptly as possible. So the parties should proceed with discovery and the subsequent stages of the case as promptly as possible to facilitate the speedy resolution of the case, and I will be referring the case to the assigned magistrate judge, who is Judge Cox, for discovery supervision and settlement.

I'll just be entering a general referral that in all the general referrals includes primarily those two matters,

discovery and settlement, as well as other matters that I will list in the referral order.

And so that concludes the ruling today. Thank you, everyone, for your time and attention, and take care. And I will issue a follow-up minute entry, as I said, and that concludes the ruling. Thank you.

03:08:09

(Which were all the proceedings heard.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Kathleen M. Fennell* *March 23, 2023*

Kathleen M. Fennell Date
Official Court Reporter